## Fairman *against* Fluck.

In replevin no set-off is allowable, under either the English statutes or our act of assembly. But the tenant may show a failure of the consideration for the rent, by the landlord's omission to fulfil his part of the contract, which operates as an exemption of the tenant from an equivalent portion of the rent.

In such case, the measure of damages to the tenant, is the difference between the annual value of the premises with and without that covenant performed; speculative or remote damages, such as a loss of custom to the tenant, cannot be allowed.

ERROR to the Common Pleas of *Alleghany County.*

John Fluck against Thomas Fairman, replevin for goods taken as a distress for rent. Issue, rent or no rent in arrear. The defence of the tenant was, that the landlord, Fairman, by the lease covenanted to make certain improvements in the yard, attached to the rented premises, which was a wagon-tavern house, which he did not perform, by reason whereof he lost his custom as a tavern-keeper, and therefore sustained damage, to the whole amount of the quarter's rent claimed in this suit, which was two hundred and fifty dollars.

The defendant below contended, that the defence of the plaintiff to the payment of the rent, was in the nature of a set-off, which was not allowable in an action of replevin. And that if the defence was available, the damages were not to be measured by the standard proposed by the plaintiff:—loss of custom.

The court below overruled the positions of the defendant by determining, that the failure of the landlord to perform his covenant, was a failure of the consideration upon which the rent was to be paid, and available as a defence. They intimated indirectly that the measure of damages was the actual loss to the tenant from all causes growing out of the non performance of the covenant by the landlord.

*Lawrie* and *Forward,* for plaintiff in error, on the question of set-off, cited Wilkinson on Replevin 37; 14 *Serg. & Rawle* 439; 4 *Term. Rep.* 511; 5 *Eng. Com. Law Rep.* 10; 18 *ibid.* 409; *Coop.* 56; 2 *Wend.* 407; 2 *Stra.* 763; 9 *Wend.* 132; 3 *Lev.* 42. As to the measure of damages, 1 *Penns. Rep.* 261; 7 *Greenleaf* 55; 4 *Page's Chan.* 572; 4 *Mass.* 630; 11 *Pick.* 288, 462; 16 *Johns.* 256.

*Livingston* and *Mahon,* contra, cited 5 *Serg. & Rawle* 117; 3 *Watts* 301; 14 *Serg. & Rawle* 439, on the subject of set-off.

The opinion of the Court was delivered by

SERGEANT, J.—In replevin no set-off is allowable, either under

[Fairman *v.* Fluck.]

the English statutes, or our own more ancient act of assembly. Replevin is in form an action *ex delicto*, and seeks damages for unlawfully seizing and carrying away personal property. | The defendant cannot avail himself of a set-off, because the demand is uncertain in its nature, and it is no justification for a tortious act, that the plaintiff is indebted to the defendant. | On the other hand the plaintiff is subject to the same restriction, because he is not within the purview of the defalcation act, and the landlord's indebtedness to his tenant does not take away the common law right to distrain,. or render the distress tortious. These principles, however, do not prevent the tenant from availing himself of any thing in bar to the avowry for rent in arrear, which goes to show that the rent claimed by the avowant, or any portion of it, is not due: for that is the ground of the distress. And if in the lease certain things are stipulated by the landlord to be done on his part, which form the consideration for the rent to be paid by the tenant, and the landlord neglects or refuses to fulfil his covenant, such breach of contract may take away his right to receive the rent, or so much of it as is equivalent to the loss sustained by the tenant: for covenants, as is said by Mr. Justice Rogers, in M'Crelish *v.* Churchman, 4 *Rawle* 35, are to be construed as dependent or independent according to the intention of the parties, and the good sense of the case; and technical words must give way to such intention. In the present instance the lease was of a tavern and wagon yard; on the one hand, the tenant agrees to pay 250 dollars per quarter, rent, and the landlord covenants to put sufficient cinders and gravel on the wagon yard as soon as practicable. This it is alleged he neglected to do, though frequently requested, and damage ensued therefrom. It is reasonable to suppose the rent was enhanced in consequence of the landlord's undertaking to put the premises in better order for the tenant's use. It would be unjust, for the landlord to recover his whole rent, when a covenant material to the beneficial enjoyment of the premises, and forming a part of the consideration for the rent stipulated, was knowingly violated: and it is a good defence for the tenant to the amount of the damage suffered, not by way of defalcation or set-off, for that is inadmissible, but as a failure of the consideration for the rent, by the act and default of the landlord, in the non-performance of his part of the contract, and therefore exempting the tenant from an equivalent portion of the rent. The court below admitted the evidence on these principles, and we think correctly.

2. The next question arising on the errors assigned is, what is the proper measure of damages for the breach of such covenant, on the part of the landlord. It ought to be the difference between the worth of the premises in the condition in which they remained, and that which they would have been in, had the landlord's covenant been performed; or in other words, so much less as they would have rented for without the covenant. In Hoburn *v.* Schuylkill Navi-

[Fairman *v.* Fluck.]

gation Company, 7 *Serg. & Rawle* 411, the plaintiff's factory was overflowed by the erection of a dam in the Schuylkill, and in a proceeding under the act of assembly, it was held, that the measure of his damages was, not what he might suffer in his business, or by the consequences of the injury, but the difference between the price the property would have brought unaffected by the obstruction, and what it would have produced when the injury was done. And in estimating the value of the item, in the present instance, not only are speculative or remote damages, such as the profits the lessee might possibly have made, to be rejected, but even the proof of a direct loss of business, by showing that a customer went away in consequence of the situation of the yard. Such standards are uncertain and variable, depending on the amount and value of custom, and different with different tenants: whereas the rule ought to be certain and uniform. It is true the court seem to have designed to guard the jury against entering into this field of conjecture, by instructing them, that "remote or speculative damages, although susceptible of proof and deducible from the non-performance, are not to be allowed," but at the same time say, " the liability of the landlord must be limited to direct damages, such as according to the nature of the subject, may be contemplated or presumed to result from his failure;" and in the result, the jury struck off the whole quarter's rent, when perhaps they may not have thought the want of one layer of cinders and gravel would have deteriorated the rent of the premises to that amount. For these reasons we think there was error in this part of the charge.

3. As to the third error, the reasons given by the court below satisfactorily show that this point was correctly ruled.

Judgment reversed, and a *venire facias de novo* awarded.