(Cuthbert *v.* Kuhn.)

tary, after an award of arbitrators, in an action of ejectment brought by James Murphy against Isaac S. Loyd.

On the trial before the arbitrators, the plaintiff produced certified copies of certain deeds and powers of attorney, from the office of the recorder of deeds, &c., which he gave in evidence in support of his title. The prothonotary allowed the expense of these exemplifications in the costs.

Mr. *Chester*, for the appellant.

Mr. *G. L. Ashmead*, contra.

---

CUTHBERT and Others *against* KUHN and Others.

IN EQUITY.

1. A lot of ground in the city of Philadelphia was granted in fee, the grantor reserving to himself in fee a certain annual ground rent: Afterwards a public street was opened by authority of law through a part of the lot, and damages were awarded by the Court of Quarter Sessions to the owner of the lot; a part of which damages was ordered to be paid to the owner of the ground-rent: *Held*, that the ground-rent was apportioned by the opening of the street, and that the rent was reduced in proportion to the amount of the lot taken for the public use.
2. Equity has jurisdiction to decree an apportionment in such case; but the proportions must be settled by a jury.

THIS was a suit in equity, instituted by Mary Cuthbert against Hartman Kuhn, Dr. Robert Hare, John Hare Powel, Samuel Powel, Samuel Powel Griffitts, and Charles Willing.

The bill set forth, that by indenture made on the fifteenth day of July, A. D. 1794, between Elizabeth Powell, of the city of Philadelphia, widow, of the one part, and Thomas Cuthbert, of the other part, reciting as is therein recited, the said Elizabeth Powel did grant and convey unto the said Thomas Cuthbert, his heirs and assigns, a certain lot or parcel of ground, situate on the east side of Penn street, in the said city, containing in breadth

(Cuthbert *v.* Kuhn.)

on the said street sixty-five feet; bounded northward by an alley ten feet wide, eastward by the river Delaware, southward by ground late of William Allen, Esquire, and westward by the said Penn street, together with the appurtenances; yielding and paying therefor and thereout, unto the said Elizabeth Powell, her heirs and assigns, the yearly rent or sum of one hundred and six Spanish silver dollars, and two-thirds of a dollar, in two equal portions, on the twenty-fifth day of March and twenty-fifth day of September in every year forever thereafter.

That by sundry mesne conveyances and assurances in the law, all that part of the said lot of ground, so conveyed by Elizabeth Powel to Thomas Cuthbert, situate between the east side of Little Water street or New street, in the said city, and the river Delaware, and containing in breadth sixty-five feet, together with the appurtenances, had become vested in the complainant, in fee, subject to the said ground rent of one hundred and six dollars [*358] and two-thirds *of a dollar, which, by agreement among the heirs of the said Thomas Cuthbert, on partition being made among them, was to be paid out of that part of the said large lot of ground which is now held by the complainant.

That the said Elizabeth Powel, after the execution of the said conveyance, made her last will and testament in writing, bearing date the twenty-second day of May, A. D. 1819, and proved on the twenty-fifth day of January, A. D. 1830, wherein she devised certain messuages and lots of ground, and also all her ground-rent estate, (so called,) to the Right Rev. William White, Protestant Episcopal Bishop, Edward Burd, Esquire, Thomas Mayne Willing, Esquire, and Edward Shippen Burd, Esquire, and their heirs, upon the following trusts, and subject to the powers, provisions, conditions and limitations therein mentioned; viz. "to the use of her nephew, John Hare Powel, for and during his natural life, without impeachment of waste, and from and after the end, expiration, or sooner determination of that estate by forfeiture, or otherwise, in his lifetime, then to the use of the said trustees and their heirs, during the lifetime of the said John Hare Powel, in trust, to support and preserve the contingent uses and estate thereinafter given or limited, from being defeated or destroyed; and for that purpose to make entries and bring actions, as occasion shall be or require; but nevertheless to permit and suffer the said John Hare Powel, during his lifetime, to receive and take the rents, issues and profits thereof, to and for his own use and benefit; and from and immediately after the decease of the said John Hare Powel, to the use of his first son, my great nephew, Samuel Powel, for and during his natural life, without impeachment of waste: and from and after the end, expiration, or sooner determination of that estate, by forfeiture

(Cuthbert *v.* Kuhn.)

or otherwise, in the lifetime of the said Samuel Powel, then to the use of the said trustees and their heirs, during the life of the said Samuel Powel, in trust, to support and preserve the contingent uses and estate thereinafter given or limited, from being defeated or destroyed; and for that purpose, to make entries and bring actions, as occasion shall be or require, but nevertheless to permit and suffer the said Samuel Powel, during his life, to receive and take the rents, issues and profits thereof, to and for his own use and benefit; and from and immediately after the decease of the said Samuel Powel, to the use of his first son, lawfully to be begotten, and the heirs of the body of such son, lawfully issuing; and for default of such issue, to the use of the second, third, fourth and fifth son and sons, and all and every other the son and sons of the said Samuel Powel, lawfully to be begotten, severally, successively, and in remainder, one after another, as they shall severally be in seniority of age and priority of birth, and of the several and respective heirs of the body and bodies of all and every such son and sons lawfully issuing; the elder of such sons, and the heirs of *his body, lawfully issuing, being al- [*359] ways preferred, and to take before the younger of such sons and the heirs of his and their bodies issuing: and for default of such issue, then to the use of the second, third, fourth and fifth son and sons, and all and every other the son and sons of my nephew, the said John Hare Powel, lawfully to be begotten, severally, successively, and in remainder, one after another, as they shall severally be in seniority of age and priority of birth, and of the several and respective heirs of the body and bodies of all and every such son and sons lawfully issuing; the elder of such sons, and the heirs of his body, lawfully issuing, being always preferred, and to take before the youngest of such sons, and the heirs of his and their bodies issuing; and for default of such issue, then to the use of Samuel Powel Griffitts, Junior, (son of Dr. Samuel Powel Griffitts,) and his heirs forever: Provided he, the said Samuel Powel Griffitts shall be living at the time of such default of issue as aforesaid; but if the said Samuel Powel Griffitts, Junior, shall not be living at the time of the default of issue last above-mentioned, then, and in such case, to the use of my great nephew, Charles Willing, (son of my aforesaid nephew, Thomas Mayne Willing,) and his heirs forever; being intended by me as tribute of respect to the memory of my father, whose name he bears."

That the said William White, Edward Burd, Thomas Mayne Willing and Edward Shippen Burd, or such of them as survived the testator, and accepted the trust, afterward resigned their said office of trustees, or have been discharged therefrom by the District Court for the City and County of Philadelphia, and that

(Cuthbert *v.* Kuhn.)

Hartman Kuhn and Dr. Robert Hare have been appointed by the same tribunal to succeed them in the said office of trustees.

That in pursuance of certain proceedings in the Court of Quarter Sessions for the County of Philadelphia, an order has been made by the said Court, for the opening of Lombard street, from its present termination at Front street, to the river Delaware; by means of which, a certain portion of the said lot, belonging to the complainant, comprising about thirty-six feet in breadth, by about ninety-one feet in length or depth, has been taken for the public use; and damages have been awarded by the said Court to the complainant, to the amount of eight thousand dollars, of which a portion is payable on account of the said ground-rent.

That the complainant is willing and desirous to pay off and extinguish such proportion of the principal amount of the said ground-rent as is equal to the part thereof, issuing out of so much of the said lot of ground as has been taken as aforesaid for the public use, or to pay off and extinguish the whole of the principal amount of the said ground-rent; but she is advised, that in consequence of the provisions and limitations in the will of the said Elizabeth Powel contained, there is no authority in any person at present to receive the same, or to give a sufficient [*360] release, discharge, or extinguishment *of the same, or any part thereof; and that the due apportionment of the said ground-rent cannot be obtained by the ordinary process of the courts of law.

The bill then prayed an injunction to restrain the defendants from proceeding to recover the whole amount of the ground-rent, and any undue proportion thereof, and for further relief.

The answer of the defendants, Hartman Kuhn, Robert Hare, John Hare Powel, Samuel Powel, a minor under twenty-one years of age, by his guardian John Hare Powel, Samuel Powel Griffitts, and Charles Willing, admitted the conveyance of the lot as stated in the bill; that Mrs. Powel made her will as there set forth; that the trustees resigned and were discharged; and that the defendants Kuhn and Hare were appointed in their place; and that Lombard Street had been opened through the lot and damages assessed for the same.

The answer then proceeded to aver that after the assessment of damages in the Quarter Sessions, an auditor was appointed by that Court, to make distribution of the said damages, &c., between the complainant, and the estate of the said Elizabeth Powel, devised in trust, as stated in the bill; and that the said auditor made his report thereon to the said Court, on the 27th day of February, A. D. 1836, and therein reported, that the value of the ground-rent payable by the said complainant to the said John

(Cuthbert *v.* Kuhn.)

Hare Powel, was $1822 22, and that that sum ought to be paid to the trustee of the said estate, out of the said sum of $8000; which report was confirmed absolutely. The answer further stated that the complainant did, by her son and agent, Mr. Allen Cuthbert, make known to the said John Hare Powel, her request and desire that the said ground-rent should be entirely extinguished and released; and that the said John Hare Powel, should agree and consent that the said sum of $1822 22 cents should be received by the trustees, in lieu, and as a full satisfaction thereof, and be by them held, appropriated and invested as part of the said trust estate: and in consideration thereof, and of other circumstances, the said John Hare Powel did present his petition to the District Court for the City and County of Philadelphia, on the 16th day of April, A. D. 1836, praying that the said Court would order and direct that the said Hartman Kuhn and Robert Hare, should receive and take the said sum of $1822 22 cents; which sum was included in and formed part of a larger sum of $6097 22 cents, the assessment and apportionment of other damages, awarded to the said trustees of the estate devised as aforesaid; and should hold the same upon the uses, trusts and dispositions, contained in the will of the said Elizabeth Powel, of and concerning the real estate, devised and bequeathed thereby, in trust, for the use of John Hare Powel, as set forth in the said bill, according to the force and effect of an act of assembly passed the 2d day of February, A. D. 1836, entitled, *"An act relative to part of the estate of Elizabeth Powel," and should invest the same according to [*361] the provisions thereof, to be approved by the Court. And the said Court made the order as prayed, and in the foregoing words. And afterwards, viz., on the 26th day of October, A. D. 1836, the said Hartman Kuhn and Robert Hare, having this authority to receive the said sum of money, the said Court of Quarter Sessions made an order, that the treasurer of the County of Philadelphia, should pay to them as trustees of the said estate, the said sum of $1822 22.

That the County of Philadelphia then being, and having for some time been unable to pay and satisfy the damages awarded as aforesaid, the county board did sometime in the year 1836, authorise and direct the commissioners of the said county, to borrow a large sum of money, on the credit of the county, at five per cent. per annum, and to issue therefore certificates of debt, not redeemable before the year    ; and part thereof was directed to be appropriated by the said commissioners to payment of damages for streets opened, &c., and among them Lombard street as aforesaid; and the said trustees, considering it to be most advisable for the estate, did subscribe thereto the

(Cuthbert v. Kuhn.)

whole amount of damages awarded to them, to wit, the sum of
$6097, which included the said sum of $1822 22, and did agree
with the complainant, who was represented by her said son and
agent, Allen Cuthbert, that in consideration of their subscribing
the whole sum of $1822 22 and receiving it in extinguishment
of the said ground-rent, the said complainant would convey to
them as trustees, for the uses and purposes of the trust, one or
two sufficient, good, and irredeemable ground-rents of the yearly
value of $106 61 and receive therefore the said subscription to
the said county stock for $1822 22; and that the said complain-
ant failed to perform her said agreement, having been advised,
as the defendants are informed by the bill, that the trustees
aforesaid cannot extinguish or release the said ground-rent.

The answer further set forth, that the defendants were ad-
vised, and humbly insisted, that neither the said Hartman Kuhn,
and Robert Hare, trustees as aforesaid, nor the said John Hare
Powel, have any right, title, or authority to extinguish or re-
lease the whole or any part of the said ground-rent, payable by
the said complainant, and that the complainant is not entitled to
claim an apportionment of the said rent, but that the whole is
chargeable on the remainder of the said lot or parcel of ground;
and that the said trustees ought to be reinstated in, and have
full possession of the whole of the said ground-rent, and that
the complainant should take and receive the said sum of $1822
22 subscribed in county stock as aforesaid in the full value of
the said ground-rent.

[*362]   *The case came on for hearing on a former day on
the bill and answer; when an objection having been
taken that the tenants of that part of the lot which lies west-
ward of Little Water street, ought to have been made parties,
the Court gave leave to amend by adding the necessary parties.

The case accordingly stood over for the purpose; and on a
subsequent day on the petition of the persons holding that part
of the lot which lies between Front and Little Water street,
they were admitted as parties, and the bill was amended accord-
ingly.

The case came on again to be heard on the amended bill and
answer.

Mr. *T. I. Wharton* for the complainants.

The first question in this case is, whether the ground-rent was
not apportioned by the opening of Lombard street, and the con-
sequent taking a part of the ground for public use. It is certain
that there is no power in the defendants, or any of them, to ex-
tinguish or release the whole ground-rent. By the will of Mrs.
Powel, this property with other real estate, is devised to Mr.

Powel for life, with remainder to trustees to preserve contingent remainders, in strict settlement, without any power to convey or release. The act of assembly referred to in the answer does not apply to this case. It merely authorises the trustees to sell certain vacant lots of ground on redeemable ground-rents. The consequence is that either the whole of this ground-rent has been thrown upon the remaining part of the original lot, or it has been apportioned by operation of law. Now, the principle of the determination of *Ingersoll* v. *Sergeant*, (1 Wharton's Rep. 337,) where it was decided that ground-rents in Pennsylvania were not governed by the strict rules which prevail in respect to rents-charge in England, seems to govern this case. In reason it would seem to be very plain, that when a part of the land out of which a rent issues, and from which the tenant derives his means of paying it, is taken away without any fault on his part, he ought to be relieved *pro tanto*. And the authorities support this view. It seems that rents-service were apportionable at common law, and before the statute of *quia emptores*, 2 Inst. 502. In 2 Co. Litt. 148 (*b.*) it is said, that if land be granted with a reservation of rent, and part of the land be evicted by an elder title, the rent shall be apportioned. In 1 Roll. Abr. p. 263 c. tit. Appointment, there are several cases showing that rent shall be apportioned when part of the land is taken by act of God or act of the law; pl. 2, 4, 5; and Id. p. 239. Gilbert on Rents, p. 186; 6 Bac. Abr. 49. In the case of the *Bank of Pennsylvania* v. *Wise*, (3 Watts, 404,) Judge Kennedy, says that the exigencies and interests of society have broken in upon the old rule in respect to entire contracts, and caused it to *yield to the accommodation of mankind, in apportioning [*363] rent wherever there has been either by act of law, or by act of the party, a division made of the land out of which the rent issues, or of the reversion to which it is incident. These authorities apply to proceedings *in rem*, in respect of the liability of the land to rent. Even in case of proceedings upon the personal covenant of the tenant, there are authorities to show that the landlord will be restrained in equity, when buildings upon the demised land have been destroyed, and he has received the insurance money. *Brown* v. *Quilter*, (Ambler, 619). In *Hare* v. *Groves*, (3 Anstr. 687,) it is true, that the tenant was held liable in covenant, but there was no insurance. Here the landlord may receive an equivalent for the loss, in the damages awarded by the Quarter Sessions. There are many cases in which equity interferes and apportions, where relief cannot be had at law; as in *Newton* v. *Rowse*, (1 Vern. 460,) and other cases cited and approved by Judge Story, in his Commentaries on Equity, vol. 1, p. 456, § 478, &c., where he shows the advan-

(Cuthbert *v.* Kuhn.)

tage of the proceedings in chancery. To throw the whole rent upon the remaining part of the lot in this case, would be unjust towards the present tenants, who became purchasers on the footing of the rent bearing a certain proportion to the extent of the ground held by them. The power of the Court to decree an apportionment is clear; but the actual apportionment it appears from the authorities must be made by a jury. Rolle's Abr. 237; 6 Bac. Abr. 50.

Mr. *Hare* for the respondents.

The foundation of this bill, and of the argument in support of it, is an imaginary equity in the complainants, to hold their land discharged of an incumbrance, of which, by its nature, the entirety attaches upon every part of the ground, because the public authority has, by due course of law, abstracted a portion of it for public use, paying a just compensation therefor, and leaving nearly five times as much as is necessary to realize the remedies of the defendant, the ground landlord.

The facts, as they appear in the bill and answer, are, that a portion, about one half, or less, of the lot out of which the rent issues, has been taken for a street; that compensation to the amount of $8000, has been awarded to the complainant, Cuthbert, for the part taken. The part remaining being more than one half, and of course worth about $8000, is here to pay nearly five times more than enough to secure the rent; and the prayer of the bill is, that the Court will compel the defendant to abandon that security for one half of the rent, and accept the county stock, or money at most, in payment thereof. The rent has been assessed at par, but being irredeemable, is, of course worth more. So that the effect of a decree will be, to make [*364] *the defendants sell their rent, or part of it, for less than the fair value.

The argument for the complainants is not founded upon a hardship suffered by them as a consequence of an act, done *in invitos,* but upon the simple fact that a part of the land has been abstracted by the act of the law. The nature of the rent, or the contract out of which the rent arose, must be regarded; and as it is an incident of it, that the whole of the rent attaches upon every part of the land, the Court is now asked to give to this particular species of contract a new character; that is to relieve against its known and anticipated consequences, occurring without hardship to the complainants, or advantage to the defendants.

A Court of Equity does, it is true, exercise a power of apportionment, as it exercises any other power of relief against hardship or mistake, &c. but it never assumes to make itself the *mo-*

(Cuthbert *v.* Kuhn.)

*derator rei*, or to convert one contract into another, or to change securities upon speculative wrong; and it certainly never interferes against an innocent party, when the wrong complained of, does not proceed from the defendant, or where it is appreciable in money, and still less where the wrong, such as it is, is imposed by the law, and the law itself gives compensation. The complainant is to receive the whole value of the rent, and has one half of the lot to pay the rent, so that he is clearly no loser. Those cases in which equity relieves, are of hardship or accident or eviction, or death, in which cases it apportions the rent.

If the whole lot had been taken, the owner of the rent would have an equity to come upon the fund awarded for the land. But upon what ground could he claim the money, where enough was left to satisfy his security, and the owner of the rent preferred to take the money ? yet his reason would be the same, a bare abstraction of the land.

The act of the law should work wrong to no man. Here it is made to work to the advantage of the complainants, for it pays the full value of land and rent to them, and improves the remainder; and it works to the injury of the defendant in compelling him to change and diminish his sureties. The equity of the bill is as vague as would be that of the defendants to an increased rent because of the increase of the value of the land by the act of the law.

The opinion of the Court was delivered by

GIBSON, C. J.—This is, in one respect, a more obvious case of apportionment than was *Ingersoll* v. *Sergeant.* There the act of apportionment was done without the concurrence of the tenant; and had the statute of *quia emptores* been in force here, as it was strangely enough supposed to be till after the second argument, I am unable to see how the necessary consequences of releasing, by *act of the party, parcel of an estate burthened with a rent-charge, could have been avoided. In England a [*365] rent *reserved* with a clause of distress in a conveyance in fee— in a word, a feefarm rent—is turned into a rent charge by force of that statute, which, abolishing intermediate tenure while the reservation severs the rent from the indispensable incident fealty, throws the landlord's right exclusively on the clause of distress, as in the case of a rent *granted* and charged by such a clause on the grantor's land, which is a rent charge proper. But though an extinction of the common law right of distress, reduces rent-service to rent-charge, a clause of distress added to it is inoperative, and productive of no such consequence, because, being against common right, it is less favoured, and accounted less

(Cuthbert *v.* Kuhn.)

worthy. (*Vide,* note to *Bradbury* v. *Wright,* Doug. 605.) There was in that case, therefore, a rent-service and not a rent-charge; a conviction of which, brought me to concur in the judgment. I take it a rent-charge can be created in Pennsylvania, only by granting an annual sum out of land charged with a clause of distress; which is the rent-charge of the common law. In the case at bar, not only is the rent feefarm, but the suspension of a part of it has been induced by an act of the law. The bill charges that a part of the premises has been taken for public use, by the opening of a street, pursuant to an order of the Quarter Sessions, and that compensation for it has been awarded respectively, to the landlord and the tenant; but as it is conceded that the residue of the ground would be sufficient for the entire rent, a doubt has been suggested whether the tenant ought not to take the landlord's compensation, and suffer him to distrain for the whole. More than a doubt of it, was certainly entertained in *Jew* v. *Thirkwell,* (Ca. in Ch. 31,) where the chancellor refused to apportion, because the land was still worth more than the rent, notwithstanding a recovery of common in it, which was the foundation of the bill; yet on principles of general equity, there is no apparent reason why a common loss should be borne by the tenant alone. Even the common law, which for part eviction suspends a proportionate part of the rent without regard to the capacity of the residue to bear the whole, deals with the subject more equitably by proportioning the rent to the enjoyment which is the consideration of it. That case, however, seems to be distinguishable from the present. There, as profits still continued to be drawn from every part of the land, the rent might continue to issue from every part of it; but might it, in contemplation of equity, do so here? As we determined in *Warner* v. *Caulk,* (ante, 193,) and as all the old books have it, rent is an incident of the enjoyment; but there can be no private enjoyment of ground taken for a public street, though the right to the soil be not divested, and the occupancy of the public might therefore be considered an equitable disseisin. Still the difference betwixt it and a recovery of common, is only [*366] in the degree; and I am unable to *discover a ground on which *Jew* v. *Thirkwell,* could be sustained. In proportion as the enjoyment is curtailed without the tenant's default, so is the rent to be; and as by the contract, which could be remodelled only by common consent, every part of the rent is to issue out of every part of the ground, the landlord could not concentrate the whole of it in a particular part; and how can we treat the subject as if he might? It may be said that as the tenant would get the whole compensation, it would be more equitable to charge the residue of the enjoyment with

(Cuthbert *v.* Kuhn.)

the entire rent than it was in *Jew* v. *Thirkwell*, where he bore the loss and got nothing. By the contract, however, the consideration of the rent is not to be money, but land, for which the tenant is not bound to accept an equivalent. Besides, on what principle he could be compelled to receive compensation awarded to another, and that too as a consideration for granting a new estate of the same nature, I cannot imagine. All the authorities from the 46 Ed. 3, 32, to the most modern, agree that a rent extinguished in part of the land, can be thrown entire on the residue only by what is in substance a fresh grant; and we cannot treat the complainant as if it might be exacted.

That the present is a case for relief here, is irrefragable. Equitable jurisdiction of apportionment springs from defectiveness, or want of a remedy at law; and I take it, the case at bar is in the latter category. An easement gained by the public, leaves the legal seisin undisturbed; consequently, when there is a Court of Chancery, apportionment for it cannot be made in replevin, unless perhaps where the demise is by parol. Failure of consideration under a reservation by deed, was relieved against by a common law court, in *Fairman* v. *Fluck*, (5 Watts, 516,) and *Warner* v. *Caulk*, only because there was no separate forum of equitable administration from which relief might be had. Even in *Jew* v. *Thirkwell*, it would have been given in equity for want of eviction to make a case at law, had not the chancellor believed it to be unattainable any where. That case, so far as regards jurisdiction—and that was not contested—is in principle the present; for the title to land over which there is a highway, remains in the original owner as strictly as it does when a right of common in it has been recovered; and if there be no eviction to work a suspension at law, it is certain that, as there is no equitable plea to an avowry, the tenant cannot have remedy for an equitable eviction by replevin. But an action at law, were it maintainable, would be fraught with those difficulties from multiplicity of interests, which first gave equitable jurisdiction in contribution; and these can be avoided only by calling in all the parties and making apportionment in a single suit so as to bind them all. But the proportions are to be settled by a jury.

---

*The following decree was made.                          [*367]
February 17th 1838. This cause having been heard on the bill and answer, it is ORDERED AND DECREED, That the complainants are entitled to have an apportionment made of the ground-rent mentioned in the said bill, according to the prayer of the said bill, and that so much thereof ought to be extinguished as shall be in just proportion to that part of the lot of ground

(Cuthbert *v.* Kuhn.)

therein mentioned which is taken for public use by the opening of Lombard street; and it is ORDERED, that the parties do proceed to a trial at law at the next Nisi Prius to be held for the City and County of Philadelphia, upon the following issue, viz. How much of the ground rent of $106 66 per annum, mentioned in the said bill and answer, has been discharged by the opening of Lombard street, and what proportion of the same ought to remain and be charged upon that part of the original lot which will remain after the opening of Lombard street. And the complainant here is to be plaintiff at law, and the parties are forthwith to prepare the pleadings, and the cause is to be put on the trial list of the second period: and it is hereby referred to James S. Smith, Esquire, as master, to settle the said issue, in case the parties differ about the same. And it is further ordered, that all books, papers, and writings in the custody or power of any of the parties, relating to the matters in question, that shall be called for by the other party, be produced at the trial: and the Court reserves the consideration of costs and of all further directions until after the said trial shall be had, &c.

Cited by Counsel, 9 Watts, 153 ; 7 Barr, 193.
Cited by the Court, 10 Harris, 150.
Explained, 6 C. 371 ; 2 Grant, 245.
See also, 4 Wharton, 90.