## Sharpless *v.* Zelley, Appellant.

*Lease—Lease of machinery—Covenant as to repairs—Rental.*

In an action to recover rental under a lease of machinery, the plaintiff makes out a prima facie case when he proves the execution of the lease, and that the defendant went into possession under it.

Where a lease of machinery provides that no liability for rent shall be incurred by the lessee until certain repairs have been made satisfactory to the lessee, the question whether the lessee's objection to the repairs was made in good faith, or was merely capricious, is a question for the jury.

In such a case the defendant enters into possession and the plaintiff enters into concurrent possession for the purpose of making the repairs, no rent accrues until after the repairs are completed, and the defendant's concurrent possession has ended. When the repairs are completed and the lessee believes in good faith that the machinery had not been satisfactorily repaired, so that it could be successfully operated, he is not bound to accept it. He may surrender the possession or offer to surrender it, or he may enter into the exclusive possession and make the repairs in accordance with the lease, and defalk the cost of making them from the rent, or he may retain the exclusive possession and deduct from the rent the difference between the rental value of the machinery as it then was, and its rental value as it would have been if the repairs had been properly made. The lessee is not entitled to the exclusive possession without making some compensation. In such a case the measure of damages is not the difference in the cost of operating the plant, since the cost of operating it is not the only element affecting the rental value.

Where a lease of machinery contained a covenant on the part of the lessor to repair the then existing plant so that the same may be successfully operated, the lessor is bound to repair all the machinery which then comprises the plant, but he is not required to furnish additional machinery or larger pumps.

Where the lessee has offered testimony as to the character of the defects to which he objected, the lessor is entitled to show the condition of the machinery at the time he completed the repairs and permitted the lessee to take possession; but it is not permissible to show the general condition of the plant after the lessee had been operating it for a year.

Evidence as to the work which the lessor had caused to be done in making the repairs to the plant, is admissible, but the amount of money paid out for such work is not so.

Argued Nov. 20, 1907. Appeal, No. 120, Oct. T., 1907, by defendant, from judgment of C. P. Del. Co., March T., 1906, No. 190, on verdict for plaintiffs in case of Serrill J. Sharpless and Eleanor S. Sharpless, his wife, in right of the wife, v. Leander S. Zelley. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Assumpsit for rental of machinery. Before JOHNSON, P. J.

At the trial the court ruled that the plaintiff had made out a prima facie case by producing the lease, showing the amount due under it, and when the defendant went into possession. [4]

When J. K. Phillips, a witness for defendant, was on the stand, he was asked this question:

"Q. In your opinion, is that plant in such condition as to be satisfactory to you? A. No, sir."

Mr. Taylor: I object to that question.

The Court: Strike out his answer. He was examined yesterday and this suit was brought for rent to January 1, 1906.

Mr. Ernest Green: You will recollect I asked Mr. Zelley if the plant was in the same condition now as it was when Mr. Sharpless left it, and Mr. Zelley said "yes." Having introduced that fact in evidence, I think I have a right to ask this witness this question.

The Court: I do not think the opinion of a man who sees a plant more than eleven months after is evidence.

To which ruling counsel for the defendant object and pray

the court to seal a bill of exceptions thereto, which is accordingly done. [6]

Mr. Ernest Green: I ask you as a practical mortar-mixing man whether or not a mortar-mixing plant in which the sand conveyers will not convey sand is a satisfactory plant to a reasonable man?

Mr. Taylor: I object to the question.

Objection sustained. [7]

Mr. Ernest Green: I ask you as a practical mortar-mixing man whether or not a mortar plant in which one of the mortar-mixing machines will not work, in which both the sand conveyers will not work, in which one of two slacking machines is not in condition to be used, in which the pumps will not convey enough water to operate the plant, in which the belt conveyer is not in such a condition as it can be run properly, and in which there is not sufficient power to run the plant, is a mortar plant which would be satisfactory to you or to any reasonable man?

Mr. Taylor: I object to that.

Objection sustained. [8]

Mr. Ernest Green: When you were down there yesterday what condition did you find this plant in?

Mr. Taylor: I object.

Objection sustained. [9]

Mr. Ernest Green: I ask you whether or not a mortar plant, in which one of the three mortar machines cannot be used, in which the only sand conveyers there are will not convey sand, in which one of the two slacking machines which there are is not fit for work, in which the pumps will not supply the necessary amount of water, and in which the belt conveyer will not operate, and in which there is not sufficient power to operate the plant all at once, can be successfully operated by any reasonable man?

Mr. Taylor: I object to that question.

The Court: Objection sustained. [10]

Mr. Ernest Green: You have heard the testimony of Mr. Zelley, and you have heard his description of the condition of the premises at the time Mr. Sharpless completed what

repairs he made.  I ask you whether or not in your opinion such a plant as he described would be a plant satisfactory to a reasonable man?

Mr. Taylor: I object to the question.

Objection sustained. [11]

Mr. Ernest Green: I ask you whether or not such a plant as you have heard Mr. Zelley describe could be successfully operated by a reasonable man?

Mr. Taylor: I object.

Objection sustained. [12]

George Oehlschlager was asked this question:

"Q. How much money altogether did Mr. Sharpless pay you?"

Mr. Ernest Green: I object to that as not relevant.

The Court: Yes, it does have some bearing upon the extent of the repairs, I suppose.  Not very much, but still it may be relevant.  Exception. [13]

The court charged in part as follows:

[So that it is quite apparent that when July 1st came both parties understood that this contract had not been carried out to put this plant in operation by July 1st.  The defendant went into possession and has been in possession since.  What does he owe this plaintiff?  He owes the plaintiff just the difference between what it cost him to operate the machine as it has been and what it would have cost him if the plaintiff had put it in the repair that his lease provided for.] [14]

[Now, it will be for you to say whether or not the plaintiff did put that belt with the cups carrying the sand in such repair as the defendant under this contract could reasonably be called upon to accept.  If he did—if the failure of the belt to do its work arose out of his lack of care or diligence, or his refusal or inability to exercise the skill he possessed, if it was his fault, then you will allow nothing for that, but if the master or the landlord did not comply with his covenant, and place it in the condition that this contract required, then he will be entitled to have deducted whatever the difference between what it cost to operate it in that way and to operate it

the way that he did in the carrying on of his business would be.] [15]

[Now, you will say from the evidence, and all this evidence is for you entirely—you will say from the evidence whether or not this landlord did put that conveyer or elevator, whichever they call it, because it elevated the sand up, if I understand, in proper condition, and the failure for it to operate arose out of the lack of care or judgment or energy of the defendant. It if did, he cannot recover anything for that, but if it was not placed in such repair as this contract agreed that it should be, then he is entitled to have deducted from this rent the difference between what it would have cost him if the machine had been as he says the landlord contracted it should be, and what it was.] [16]

[Now, you see these are all questions of fact. Did this landlord, this plaintiff, do all that was required to be done under the arrangement as the defendant said he understood it, and in which the plaintiff very largely acquiesces in the understanding, because it is admitted all around that when July 1st came this machine was not in order. Nobody denies that. And then they started out to make it useful not only to the defendant, but to the landlord. Now, he must pay this rent, $325, if the landlord has complied with his part of the bargain—placed this machine—repaired it according to the terms of this contract. If the landlord has not he will be entitled to have deducted from the rent just what you shall find is the difference—the difference it would cost him to operate it as it was, because he was entitled to have it according to the contract. Whatever that difference is you will deduct from $325, and the interest on $325, from January 1st.] [17]

Verdict and judgment for plaintiffs for $275. Defendant appealed.

*Errors assigned* were (1) in refusing binding instructions for defendant; (2) in overruling defendant's motion for judgment non obstante veredicto; (3) in entering judgment on the verdict; (4, 6–13) rulings on evidence, quoting the bill of exceptions; (5) portion of opinion, quoted in the opinion of

the Superior Court, and (14–17) above instructions, quoting them.

*Horace P. Green* and *Ernest Leroy Green,* for appellant.— The covenant to repair is construed most strongly against the party imposing such covenant on himself, and most favorably to him in whose favor the covenant is made: Miller v. Mc-Cardell, 19 R. I. 304; 33 Atl. Repr. 445.

It is respectfully submitted that evidence of the amount of money expended upon the plant does not in the slightest degree render probable or improbable the making of repairs satisfactory to the lessee, so that the plant could be successfully operated by him.

It was error for the court to charge the jury that the question was whether the plaintiff put the machine "in such repair as the defendant under his contract could reasonably be called upon to accept: Seeley v. Welles, 120 Pa. 69; Delahunty Dyeing Machine Co. v. Penna. Knitting Mills, 19 Pa. Superior Ct. 501.

The proper measure of damages to a tenant for failure of a landlord to comply with his covenant to repair is "the difference between the rental value of the premises in the condition in which they remained and that which they would have been in had the landlord's covenant been performed:" Gorman v. Miller, 27 Pa. Superior Ct. 62.

*William Taylor* and *W. Roger Fronefield,* for appellees.— Even though the contention of the appellant, in the interpretation of the lease, is right, that even though he went into possession, he was not obliged to pay any rent until the repairs were made, still, the repairs were completed, though not until about ten days late.

Even though the repairs were not fully made, the tenant cannot escape paying the rent for the premises, after deducting the amount of damages he suffered, because they were out of repair: Gorman v. Miller, 27 Pa. Superior Ct. 62; Obermyer v. Nichols, 6 Binney, 159; Bradley v. Trust Co., 7 Pa. Superior Ct. 419; Prescott v. Otterstatter, 85 Pa. 534; Miller v. Phillips,

31 Pa. 218; Grunwald v. Hahn, 176 Pa. 37; White v. Braddock Borough School District, 159 Pa. 201.

The statement of the measure of damages was more favorable to the defendant than the difference in rental values because the evidence, of the extra cost of operation, given by defendant, was as much as the whole rent. The plaintiff had cause for complaint: Wayne v. Lapp, 180 Pa. 278.

OPINION BY PORTER, J., July 15, 1908:

The plaintiffs leased to the defendant a mortar mixing plant, in the borough of Darby, for a term of three years from July 1, 1905, at the rent of $2,250 for the term, $100 to be paid on the execution and delivery of the agreement and $325 on January 1, 1906, etc. The defendant paid the $100 required upon the execution and delivery of the lease, but did not pay the $325 called for by the lease on January 1, 1906, and the plaintiffs brought this action of assumpsit to recover that installment. The lease contained this covenant: "The lessor herein named hereby covenants and agrees to make repairs to the said mortar plant upon the said demised premises satisfactory to the lessee herein named, so that the same may be successfully operated by the said lessee; said repairs to be fully made and completed by the 1st day of July, A. D. 1905, and no liability for rent shall be incurred by the said lessee under this lease until such repairs have been made." The defendant asserts that the plaintiffs failed to make the repairs called for by this covenant of the lease and that because of such failure he is by said covenant relieved from liability to pay this installment of rent.

There was a conflict of evidence as to whether the plaintiffs had made the repairs required, and the defendant had accepted the work as done as a performance of the covenant of the lease. The defendant testified at the trial that the repairs were not satisfactory to him, but whether his objection to the manner in which the repairs were executed was made in good faith or was merely capricious was still a question for the jury: Singerly v. Thayer, 108 Pa. 291; Meacham v. Gardner, 27 Pa. Superior Ct. 296. The evidence did not entitle

the defendant to binding instructions and it would have been error in the court below to have entered judgment in his favor notwithstanding the verdict. The first, second and third specifications of error are overruled. The plaintiff had made out a prima facie case when she proved the execution of the lease and that the defendant went into possession under it, and the fourth specification of error is without merit.

The fifth and fourteenth specifications of error may be considered together. The fifth specification is based upon the following paragraph from the charge: "Because he (the defendant) occupying the premises . . . . he could have rescinded and walked away, but having taken possession he must pay what it was worth under this contract." The fourteenth specification refers to the following paragraph of the charge: "So that it is quite apparent that when July 1st came both parties understood that this contract had not been carried out to put this plant in operation by July 1st. The defendant went into possession and has been in possession since. What does he owe the plaintiff? He owes the plaintiff just the difference between what it would cost him to operate the machine as it has been and what it would have cost him if the plaintiff had put it in the repair that his lease provided for." In view of the covenants of the lease and the testimony produced at the trial, we are of opinion that these instructions were erroneous. The covenant of the lease hereinbefore quoted required the plaintiff to make repairs to the said mortar plant "satisfactory to the lessee," and expressly stipulated that no liability for rent should be incurred by the lessee until such repairs had been made. The intention of the parties to the lease manifestly was that the mortar plant should be fully repaired and ready for successful operation by July 1, 1905, but the covenant in question clearly indicates that they recognized that there was a possibility that the repairs could not be completed prior to that date, and to meet that contingency they expressly covenanted that the accruing of rent should be suspended until the repairs were completed. It was a fact admitted by both sides at the trial that the repairs were not completed and no part of the plant was ready to be put in operation until a

considerable period after July 1. The defendant, under an arrangement between the parties, did personally commence, during the latter part of June, going to the premises and assisting the plaintiff in making the repairs, the purpose of the parties being to get the plant in condition to start as soon as possible. The various parts of the machinery were started and tested during the progress of the repairs, but the plaintiff actually continued in the prosecution of the work of repairing the machinery until the last of September. So long as the plaintiff was actually engaged in the work of repair it could not reasonably be said that the repairs had been completed. The fact that a part of the plant had been put in operation did not change the contract of the parties. They had covenanted that the rent should not begin to run until the repairs were completed. The defendant was present upon the premises while the repairs were going on, but the plaintiff was in concurrent possession, under the covenants of the lease, for the purpose of making the repairs. The parties had in their contract left nothing to inference, they had incorporated a covenant which saved the defendant from all liability for rent prior to the time of the completion of the repairs. Under the undisputed evidence in the case and the covenants of the lease the defendant was not liable for rent of the premises for that part of the term prior to the last of September, 1905. The fifth and fourteenth specifications of error are sustained.

When, about October 1, 1905, the defendant had notice that the plaintiff considered the repairs completed and was about to withdraw from the concurrent possession which had existed during the progress of the repairs, he had not yet entered upon the term or become liable for rent. He was then called upon to act. If he in good faith believed that the plant had not been satisfactorily repaired, so that it could be successfully operated, he was not bound to accept it. He could have surrendered the possession, or offered to surrender it, and relieved himself from the payment of rent and become entitled to recover what he had paid, or he could have entered into the exclusive possession and made the repairs, in accordance with the terms of the agreement, and defalked the cost of making

them from the rent, or he could have retained the exclusive possession and deducted from the rent the difference between the rental value of the mortar mixing plant as it then was and its rental value as it would have been had the covenant of the plaintiff been performed: Warner v. Caulk, 3 Wharton, 193; Gorman v. Miller, 27 Pa. Superior Ct. 62. The lease covenanted that, until the repairs were made, no liability for rent should be incurred "by the said lessee under this lease," but it did not covenant that the lessee should have exclusive possession of the property, for the period of three years, without making compensation. A covenant in a lease which provides that the landlord shall make repairs before the term begins and that until such repairs are made the covenantee shall not become bound by the terms of the lease gives to the lessee an election, upon failure of the landlord to make the repairs, to decline to enter under the lease and rescind the contract or to take possession and defalk the damages suffered, according to the measure above stated, but it does not, in the absence of an express covenant to that effect, give him the additional right to take possession and refuse to pay any rent whatever. The learned judge of the court below, while recognizing the right of the defendant to defalk the damages arising from the failure of the plaintiff to perform the covenant to repair, charged the jury that the measure of damages was the difference in the cost of operating the plant. While the difference in the cost of operation might affect the rental value of the property, it is not the only element to be considered. The productiveness of the plant might be directly affected or the condition might be such as to impair the quality of the product. The fifteenth, sixteenth and seventeenth specifications of error are sustained.

The offer of testimony, the rejection of which is the foundation of the sixth specification of error, was properly excluded. The covenant of the lease only required the plaintiff to repair the then existing mortar plant, it did not require her to install a more powerful engine or new and improved devices. The plaintiff was bound to repair, to the satisfaction of the lessee, all the machinery which then comprised the plant; it

was not for her to say that there were more mortar machines or lime slaking machines than the defendant would find necessary in his business, she was bound to put all the existing machinery in good repair, but she was not required to furnish additional machinery. The question asked of the witness Phillips involved the general character of the plant and was not confined to the condition of repair in which he found the machinery which composed the plant. The sixth specification is overruled. The offer of testimony, the rejection of which is the subject of the seventh specification of error, seems to have been proper. The sand conveyer was one of the machines used in connection with this plant, and the undisputed testimony indicates that it is an important labor-saving device. Much testimony had been offered as to the condition of repair in which the plaintiff left this sand conveyer. The witness, Phillips, had been shown to be a man of large experience in this business and the defendant ought to have been permitted to show by him the necessity for having the sand conveyor in good condition in order to have a satisfactory operation of the plant. The seventh specification is sustained. The eighth and tenth specifications of error are founded on the sustaining of objections to questions which assumed that the plaintiff had covenanted that the pumps would convey enough water to operate the plant. The plaintiff had covenanted to repair the pumps, in connection with the other machinery, but she had not covenanted that the water supply was sufficient nor that the pumps were large enough to properly supply the plant. These specifications of error are dismissed. The offer to show the general condition of the plant after the defendant had been operating it a year was properly rejected, and the ninth specification is dismissed. The condition of the machinery of the plant at the time the plaintiff completed the repairs and permitted the defendant to take possession was material to the determination of the rights of the parties. The defendant had offered testimony as to the character of the defects in the appliances and it was proper for him to show, as affecting the rental value, whether the machinery in such condition could be successfully operated. We

are of opinion that the testimony, the rejection of which is the subject of the eleventh and twelfth specifications of error, ought to have been admitted, and those specifications of error are sustained. Evidence as to the work which the plaintiff had caused to be done in making the repairs of the plant was material, but the amount of money which she had paid out for that work was not so; for this reason the thirteenth specification of error is sustained, although we would not reverse the judgment upon that ground alone, as the evidence certainly could do the defendant's cause no harm.

The judgment is reversed and a venire facias de novo awarded.