McDanel, Appellant, *v.* Mack Realty Company et al.

Argued March 26, 1934. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Myron E. Rowley,* of *Craig & Rowley,* for appellant.

*Thomas C. Buchanan,* with him *Frank E. Reed* and *Douglass, Fife & Young,* for appellee.

OPINION BY MR. JUSTICE MAXEY, April 23, 1934:

The appellant, R. B. McDanel, brought this action in assumpsit against the Mack Realty Company (hereinafter called "Realty Company") and the G. C. Murphy Company (hereinafter called "Murphy Company") for damages sustained by the breach of a written agreement of lease. In the course of the trial the appellant was nonsuited as to Murphy Company. By award of the jury the appellant succeeded against Realty Company. The verdict was $4,152.60. A motion for judgment n. o. v. was made and granted. Plaintiff appealed.

In 1929 Realty Company owned a four-story brick building on Brighton Avenue in the Borough of Rochester, Beaver County. Murphy Company owns all the stock in Realty Company and the latter is actually the realtor for Murphy Company. The latter has a chain of five-and-ten-cent stores. In this particular case Murphy Company were tenants on the first floor and the basement of the brick building above described. On July 20, 1929, Realty Company executed a written lease for the premises on the second floor of this building for a bowling and pool business to McDanel for ten years commencing September 1, 1929. The rent was apportioned in monthly installments and was graduated for various terms during the period of the lease.

On September 1st, the premises were not ready for occupancy because of certain repairs that were being made and by agreement between the parties, no rent was to be

paid by McDanel until January 1, 1930, and thereafter the rent until July 1, 1930, was to be $100 per month. After this date the monthly installments were to be the same as set forth in the lease. Ten bowling-alleys and six pool-tables and the usual additional equipment of a bowling-alley and pool-table business were installed. There was also a separate agreement which called for Realty Company consenting to the assignment of the lease by McDanel to a corporation to be organized by him for the operation of bowling-alleys. The lease contained, inter alia, a provision for furnishing heat during the winter months. This provision reads as follows: "The lessor hereby agrees to furnish during the months artificial heat as ordinarily furnished, sufficient heat to the premises hereby leased to keep the same comfortably warm except on Sundays and after the hour of 9:00 P. M., during week days, it being understood that the lessor may bank the furnaces each evening at or before 9:00 P. M."

The bowling alley was opened for business on February 14, 1930, and on June 1, 1930, the plaintiff made the first default on his rent, which was then $100. This June rent was paid on July 29, 1930. The July rent was then in default and was not paid until October 25, 1930. The August rent of $350 was not paid until November 13, 1931. The payments became more irregular and in much smaller amounts, until February 2, 1932. The default began within four months after the opening of the business and continued for almost a year and a half thereafter. In December, 1931, at the time the tenant was writing about his inability ever to pay the rent, he was removing all of the pool-tables from the premises. At this time the appellant was in default for a large amount of rent and these pool-tables were subject to the landlord's lien under the terms of the lease. On February 12, 1932, the landlord issued its warrant to enforce its lien and in due time sold all plaintiff's personal property on the premises. for $1,050.

This action was brought by plaintiff to recover three separate damage claims. He contended, first, that he was damaged because Realty Company had neglected and refused to furnish heat as required in the lease. The second claim was for damages suffered by him because of the refusal of Realty Company to consent to the assignment of the lease to a new corporation formed by the appellant and called the "Republic Amusements, Inc." The third claim for damages was because of the alleged improper and illegal eviction from the leased premises in February, 1932, apparently by virtue of the execution of the landlord's warrant. The court below refused to allow the appellant to recover any damages for the first two causes, but submitted to the jury the question of damages for illegal eviction.

The question resolves itself to this: Did the landlord, Realty Company, have a right to make the distress, the result of which was that McDanel was evicted from the premises? The appellant contends that having defaulted in the performance of the covenant in the lease to heat his premises, the lease was entirely breached and the landlord had no right to make a distress under it and that his doing so was an illegal eviction. With this we cannot agree. In view of the default in the payment of rent for a year and a half the distress was justified.

But the appellant argues that there was a clear default by the landlord in its covenant to heat the premises and he asks: "What is my remedy for the violation of this covenant?" The first answer to this is: Three remedies are available to a tenant where a landlord fails to perform a lease covenant: (1) Upon the landlord's failure of performance, the tenant can perform it at his own expense and defalk the cost of such performance from the amount of rent due and payable; or (2) the tenant can surrender the possession of the premises to relieve himself from any further payment of rent; or (3) he can retain possession of the premises and deduct from the rent the difference between the rental value of the

premises as it would have been if the lease had been fully complied with by the landlord and its rental value in the condition it actually was. See Gorman v. Miller, 27 Pa. Superior Ct. 62, 68. The appellant resorted to none of these remedies. There is no evidence before us as to what the cost of heating the premises would have been. There is evidence that the difference in value between the premises heated and the premises unheated is $25 per month. If the tenant had paid his rent each month he would have been entitled to deduct this sum of $25, but the default here was for almost a year and a half at a monthly rental of $350.

Our second answer to the appellant is that as the record stands he cannot recover anything. Judge McConNEL of the court below clearly set forth the reason why: "The ordinary rule is that one who has himself violated the terms of a written contract cannot enforce it as against the other party thereto provided it be an entire contract; but this rule does not seem to apply as between landlord and tenant so far as the question of the payment of rent by the tenant is concerned in case the landlord violates a covenant to repair or improve the premises, or to properly heat the same, etc. The general rule is set forth in Restatment of the Law of Contract, 391, section 269, as follows: 'Where by the terms of promises for an agreed exchange a stated material performance by one party is due at an earlier time than a stated performance by the other party, the duty to render the later performance is constructively conditional on the earlier performance being rendered, except as stated in section 268 (2).' Section 268 reads as follows: '(1) Whereby the terms of promises for an agreed exchange at least a material part of the performance on one side is to be performed at the same time as all or a material part of the performance on the other side, then if the premises of these respective performances can be simultaneously performed and the parties assured that they are being so performed, they

are concurrently conditional, except as stated in subsection (2).

" '(2) If a party has received all or substantially all the agreed exchange for a performance promised by him, his duty to render that performance is not conditional upon any further performance by the other party, except when it is expressly so provided.'

"Under the evidence as produced in this case the plaintiff was continually in default in payment of rent from June, 1930, until he was closed out by the landlord in 1932. There could be no breach by the landlord of the covenant to heat until he was notified by the plaintiff of his failure to comply with this condition, and thereafter failed to properly heat the premises of the plaintiff. No notice was given to the Realty Company of lack of heat until November of 1930, and at that time the plaintiff himself was greatly in default so far as the rent was concerned, and thereafter he continued to be in default during the entire time he remained in possession of the leased premises. It seems to us that under those circumstances the plaintiff himself being in default first cannot recover anything under the law......

"The rule set forth in Restatement of the Law of Contracts 429, section 290, as to the nonperformance of a covenant by one party to a lease, or other conveyance of land, is as follows: 'Nonperformance of a covenant by one party to a lease or other conveyance of land, unless performance of the covenant is an express condition, does not excuse the other party from performing his covenants further than the law of property governing the effect of eviction of the grantee or of waste by him provides.' "

The court below correctly cites as authorities for its decision: Obermyer v. Nichols, 6 Binney's Reports 158; Prescott v. Otterstatter, 85 Pa. 534; Allegaert v. Smart, 2 Pennypacker's Reports 320; Fairman v. Fluck, 5 Watts' Reports 516; Sutton v. Reed, 80 Pa. Superior Ct. 158; 28 A. L. R. Ann. 1453.

The record of the trial is not before us. Counsel agreed in writing that "the facts are contained in the opinion of the court below and as therein stated are correct." In correspondence with Realty Company, appellant complains of his inability to pay the rent stipulated. The court below in its opinion thus refers to this correspondence and its tenor, as follows: "The plaintiff himself knew that the lease in question was a very bad one and that the rent was unreasonably high, and that he could not possibly pay the rent which he had agreed to pay, for in the letter which he wrote to the G. C. Murphy Company on May 27, 1930, he says that it is impossible to continue on at Rochester at $350 a month and expect to get the back rent, and that he was figuring on closing the alleys up the first of June. In his letter of June 29, 1931, he says, 'We are trying to finance these bowling alleys, but it has been an uphill job owing to conditions at this time in this district, but it will be impossible for us to figure on paying $350 a month on that room.' In his letter of November 16, 1931, he says 'there is no bowling alley any place in Beaver Valley which is even making expenses.' In his letter of November 30, 1931, he declares that Rochester has been nothing but a bill of expense since he took the place over, and that he had been paying to keep the Rochester place going out of his own personal account. In his letter of December 14, 1931, he says 'it is impossible to pay anyways near $350 a month rent on the Rochester alleys, and it will only be a short time until the amount of accumulated rent will equal the amount invested in the bowling alley.' In his letter of February 1, 1932, appellant said 'Unless there is some arrangements to be made, or can be made about this Rochester proposition, the only way it can be settled up is that Murphy Company will have to issue a landlord's warrant and take over the place.' " This last suggestion seems to have been acted upon.

The judgment is affirmed.