384 A.2d 1234

**J. C. PUGH, Appellee,**

**v.**

**Eloise P. HOLMES, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 13, 1977.

Decided April 13, 1978.

78

David R. Woodward, Chambersburg, for appellant.

No appearance entered nor brief submitted for appellee.

Before WATKINS, President Judge, and JACOBS, CER-CONE, PRICE, VAN der VOORT and SPAETH, JJ.

JACOBS, President Judge:

This appeal presents an issue important to the application of landlord-tenant law. Appellant Mrs. Holmes requests that Pennsylvania join the growing number of jurisdictions which have abolished the principle of *caveat emptor* (or *caveat lessee*) and applied the doctrine of implied warranty of habitability to landlord-tenant relationships.[1] For the reasons stated below, we hold that *caveat emptor* is no longer applicable to residential leases and that an implied warranty of habitability will apply to all such leases.

Appellant has rented a residential dwelling in Chambersburg, Franklin County, from appellee since November, 1971. The rental is based on a month-to-month oral lease and the rent is sixty dollars monthly. The only income appellant and her two minor children receive is $294 in monthly public assistance payments.

In April, 1976, appellee filed an assumpsit action against appellant before a justice of the peace alleging that appellant had failed to pay her rent from September, 1975, through April, 1976. Appellee obtained a judgment and appellant filed a notice of appeal with the Court of Common

---

1. We commend appellant's counsel on the thorough and well-written brief submitted.

Pleas of Franklin County. Appellee then filed a complaint requesting judgment for unpaid rent in the amount of $576. In August, 1976, appellee filed a second action against appellant before the justice of the peace and obtained a judgment for possession and for unpaid rent. Appellant again appealed to the Court of Common Pleas and appellee filed a complaint seeking possession and unpaid rent.

Appellant filed an Answer Containing New Matter to both complaints in which she raised a breach of the implied warranty of habitability as a defense. In support of her answer, appellant alleged that since September, 1975, appellee failed to maintain her dwelling "in a safe, sanitary, and healthful condition fit for human habitation." She listed ten specific factors, including a leaking roof, lack of hot water, leaking pipes, infestation by cockroaches, and hazardous steps and floors, as examples of the uninhabitable condition of her rental premises. She also alleged that she had notified appellee of these defective conditions and that he did not repair them. On the basis of this implied warranty defense, appellant argued that her obligation to pay rent to appellee had been relieved and that she was neither responsible for the past rent nor should she have to relinquish possession of the dwelling.

Appellant also denied that the total rent for May, 1976, was due because, after notifying appellee of a broken lock on her front door and giving him a reasonable opportunity to repair it, she replaced the lock herself at a cost of six dollars. The six dollars, she stated, should be deducted from the rent claimed as past due. Finally, appellant asserted a counterclaim for twenty-five dollars for the cost of repairing several other defective conditions of which she had given appellee notice, but which he did not correct.

Appellee entered preliminary objections in the nature of a demurrer both to appellant's request that her rental obligation be abated and to the counterclaim for repair costs. The lower court sustained appellee's preliminary objections and appellant brought this appeal. During the pendency of this appeal, appellant has been depositing forty-five dollars monthly into an escrow account.

Landlord-tenant law traditionally has been controlled by the common law. The origins of the doctrine *caveat emptor* stem back to the sixteenth century when landlord-tenant relationships developed in a primarily agrarian society.[2] Leases were treated as conveyances and tenants rented the land surrounding their dwellings, with the dwellings themselves regarded as little more than appendages to the land. ". . . [T]he governing idea [was] that the land [was] bound to pay the rent," that is, rent issued out of the land, not from the dwelling or the tenant. Pollock and Maitland, *The History of English Law*, II, 130–131 (1909).

Because the focal point of early landlord-tenant relationships was the land itself, little attention was paid to the dwelling situated on the land. The landlord had no obligations to the tenant other than those made expressly, and the tenant's obligation to pay rent was independent of the landlord's obligation to maintain a habitable dwelling for the tenant. The doctrine of *caveat emptor* was fully applicable. The tenant's only protections were to inspect the premises before taking possession or to extract express warranties from the landlord. It was assumed that landlords and tenants held equal bargaining power in arranging their rental agreements, and that the agrarian tenant had the ability to inspect the dwelling adequately and to make simple repairs in the buildings which possessed no modern conveniences such as indoor plumbing or electrical wiring.

As agrarian society declined and population centers shifted from rural to urban areas, the common law concepts of landlord-tenant relationships did not change. Despite the facts that the primary purpose of the urban leasing arrangement was housing and not land and that the tenant could neither adequately inspect nor repair urban dwelling units,

2. For related discussions on the history of *caveat emptor* as applied to the landlord-tenant relationship, *see Javins v. First National Realty Corporation*, 138 U.S.App.D.C. 369, 428 F.2d 1071 (1970), *cert. denied*, 400 U.S. 925, 91 S.Ct. 186, 27 L.Ed.2d 185 (1970); *Lemle v. Breeden*, 51 Haw. 426, 462 P.2d 470 (1969), *reh. denied*, 51 Haw. 478 (1969); *Old Town Development Company v. Langford*, Ind.App., 349 N.E.2d 744 (1976), *Pines v. Perssion*, 14 Wis.2d 590, 111 N.W.2d 409 (1961), and the cases and authorities therein cited.

landlords still were not held to any implied warranties in the places they rented and tenants leased dwellings at their own risk.

In some instances, the courts created exceptions to the common law landlord-tenant rules in order to alleviate the law's harshness. For example, the Massachusetts Court implied a warranty of fitness for immediate use as applicable to furnished dwellings rented for short time periods. *Ingalls v. Hobbs*, 156 Mass. 348, 31 N.E. 286 (1892). A landlord's fraud on the tenant and the legal fiction of constructive eviction also have been applied as exceptions to the doctrine of *caveat emptor. See, Lemle v. Breeden*, 51 Haw. 426, 429, 462 P.2d 470, 472 (1969), *reh. denied* 51 Haw. 478 (1969); *King v. Moorehead*, 495 S.W.2d 65, 69–70 (Mo. App., 1973).

These exceptions, however, have proved inadequate to protect many tenants. Most rental units are neither furnished nor leased for short periods of time. Constructive eviction requires that a tenant vacate the leasehold, a difficult, if not impossible, requirement in times of low cost housing shortages. And, fraud by a landlord is not easily proved. For these reasons, the courts in many jurisdictions have explicitly rejected the applicability of *caveat emptor* and have implied a warranty of habitability and fitness for use of the premises.[3] Those courts which have abolished

---

3. One court which adopted the implied warranty of habitability indicated that *caveat emptor* has been abolished and the implied warranty of habitability applied to residential leases by courts in all jurisdictions which have considered the issues. *King v. Moorehead*, 495 S.W.2d at 71. The Restatement (Second) of Property lists cases in 18 jurisdictions which, to date, have adopted an implied warranty of habitability in residential leases. Explanatory Notes, § 5.1, comment b at 175 (1977). The Indiana Appellate Court, in a 1976 opinion, listed cases in 21 jurisdictions which have explicitly or implicitly embraced some form of the implied warranty of habitability. *Old Town Development Company v. Langford*, at Ind.App., 349 N.E.2d 757–758. Both sources cite Pennsylvania cases, a Common Pleas Court decision, *Derr v. Cangemi*, 66 Pa.D. & C.2d 162 (Philadelphia Co., 1974), as implying a warranty of habitability in a residential lease, and a Supreme Court case, *Commonwealth v. Monumental Properties, Inc.*, 459 Pa. 450, 329 A.2d 812 (1974) as embracing a

*caveat lessee* in favor of an implied warranty of habitability have all made a similar finding: the tenant is no longer interested in renting land, but rather a dwelling house fit for habitation. As the Court in *Javins v. First National Realty Corporation* stated,

> When American city dwellers, both rich and poor, seek 'shelter' today, they seek a wellknown package of goods and services [footnote omitted]—a package which includes not merely walls and ceilings, but also adequate heat, light and ventilation, serviceable plumbing facilities, secure windows and door, proper sanitation, and proper maintenance.

138 U.S.App.D.C. 369, 372, 428 F.2d 1071, 1074 (1970), *cert. denied*, 400 U.S. 925, 91 S.Ct. 186, 27 L.Ed.2d 185 (1970). Gone are the days of equal bargaining power between landlord and tenant. In both rural and urban areas, housing, especially low cost housing, is scarce. A landlord may offer a dwelling, regardless of its condition to a tenant on an "as is" basis, knowing that if the tenant declines to accept the premises, several others who need housing just as badly will be waiting to take the property. Today's tenant can neither adequately inspect nor repair dwellings. Furthermore, at least one court has found that the continued letting of "tumbledown" houses is ". . . a contributing cause of such problems as urban blight, juvenile delinquency and high property taxes for conscientious landowners." *Pines v. Perssion*, 14 Wis.2d 590, 596, 111 N.W.2d 409, 413 (1961).

The jurisdictions which have addressed the issue, then, have uniformly decided that the tenant must be afforded more protection than he or she has been given at common law. For that reason, courts have rejected *caveat emptor* and have adopted the doctrine of an implied warranty of habitability ". . . as the most appropriate way to restore a fair and balanced relationship between landlords and residential tenants and to encourage the decent maintenance of our residential housing supply." *Morbeth Realty Corp. v. Velez*, 73 Misc.2d 996, 999, 343 N.Y.S.2d 406, 410 (1973).

warranty of habitability by applying the Unfair Trade Practices and Consumer Protection Law to residential leases.

It is time for Pennsylvania to join the trend toward the implied warranty of habitability. To do so will not be a complete and sudden break with the past, but only the next step in the law which has been developing in the Commonwealth for a number of years. The Pennsylvania courts have long provided remedies for tenants whose landlords breach express covenants in their leases. *McDanel v. Mack Realty Company*, 315 Pa. 174, 172 A. 97 (1934); *Gorman v. Miller*, 27 Pa.Super. 62 (1905). Consumers have been protected in the buying of goods by implied warranties of merchantability and fitness for a particular purpose since the 1950's. The Act of April 6, 1953, P.L. 3, § 2–314 and § 2–315, *as reenacted*, Act of Oct. 2, 1959, P.L. 1023, § 2, 12A P.S. § 2–314 and § 2–315 (1970). In 1968, our Supreme Court adopted § 357 of The Restatement (Second) of Torts and imposed liability on a landlord who had breached a contract to repair the rented premises, when such breach resulted in injury to the tenant because of a dangerous condition on the premises. *Reitmeyer v. Sprecher*, 431 Pa. 284, 243 A.2d 395 (1968). In adopting § 357, at that time still the minority rule in the United States, the Court stated, "If our law is to keep in tune with our times we must recognize the present day inferior position of the average tenant vis-a-vis the landlord when it comes to negotiating a lease." *Reitmeyer v. Sprecher*, at 431 Pa. 290, 243 A.2d 398.

Three years after *Reitmeyer*, the Supreme Court held Pennsylvania's Rent Withholding Act (the Act of Jan. 24, 1966, P.L. 1534, § 1, *as amended*, Act of Aug. 11, 1967, P.L. 204, § 1, Act of June 11, 1968, P.L. 159, No. 89, § 2, 35 P.S. § 1700–1 (1977)) to be constitutional. *DePaul v. Kauffman*, 441 Pa. 386, 272 A.2d 500 (1971). According to the Act, if a dwelling within a first class, second class, second class A, or third class city is certified as "unfit for human habitation," the tenant's rental obligation is suspended until the dwelling is recertified as fit or until the tenancy is terminated for a reason other than non-payment of rent. *DePaul v. Kauffman*, at 441 Pa. 389, 272 A.2d 502. In 1972, our Supreme Court overruled the doctrine of *caveat emptor* and applied

an implied warranty of workmanship and habitability. in houses sold to buyers by builders-vendors. *Elderkin v. Gaster,* 447 Pa. 118, 288 A.2d 771 (1972). Before *Elderkin,* only ten other jurisdictions had abolished *caveat emptor* in the builder-vendor situation. *Elderkin v. Gaster* at 447 Pa. 126, 288 A.2d 275. Two years later, the Court extended the Unfair Trade Practices and Consumer Protection Law, Act of Dec. 17, 1968, P.L. 1224, §§ 1–9, 73 P.S. §§ 201–1 to 201–9 (1971), to cover the landlord tenant relationship. *Commonwealth v. Monumental Properties, Inc.,* 459 Pa. 450, 329 A.2d 812 (1974). In holding that the tenant must be protected from unfair or deceptive practices in connection with the leasing of housing, the Court noted that,

> It would be difficult indeed to imagine anything that affects the lives and welfare of the people of this Commonwealth more than housing. The Legislature has repeatedly declared that this Commonwealth suffers from a housing crisis. In 1937, 1941, 1945, 1947, 1957, 1959, 1965, 1968, and 1972, the Legislature found as a fact that a housing shortage exists. [Citations and footnotes omitted.]

*Commonwealth v. Monumental Properties, Inc.,* at 459 Pa. 474–475, 329 A.2d 824. Finally, the Courts of Common Pleas of both Columbia and Philadelphia Counties have adopted and applied an implied warranty of habitability in residential leases. *Edwards v. Watt,* (Columbia Co., 1975); *Derr v. Cangemi,* 66 Pa.D. & C.2d 162 (Philadelphia Co., 1974).

The Pennsylvania laws and cases discussed above make clear that our decision today is not a dramatic and unexpected making of new law, but rather another step in our progression toward providing tenants with the protection they need in finding habitable housing. Accordingly, we discard the doctrine of *caveat emptor* as it applies to landlord-residential tenant law. We hold that a lease, be it written or oral, periodic or at will, is to be controlled by the principles of contract law. All leases will contain an implied warranty of habitability; the tenant's obligation to pay rent and the landlord's obligation to maintain habitable premises

will be mutually dependent. A material breach of one of the obligations will relieve the obligation of the other so long as the breach continues.

The implied warranty is designed to insure that a landlord will provide facilities and services vital to the life, health, and safety of the tenant and to the use of the premises for residential purposes. *King v. Moorehead* at 495 S.W.2d 75. There must be no latent defects in the facilities or the utilities at the beginning of the lease and all of the essential features of the leasehold must remain in a reasonably fit condition throughout the leasehold. *Old Town Development Company v. Langford*, Ind.App., 349 N.E.2d 744, 764 (1976); *Mease v. Fox*, Iowa, 200 N.W.2d 791, 796 (1972). We hasten to add, however, that while the landlord has an obligation to repair damages caused by normal wear and tear, the tenant will be held liable for any damage caused by malicious, abnormal, or unusual use. *Marini v. Ireland*, 56 N.J. 130, 144, 265 A.2d 526, 534 (1970). Finally, we note that while the tenant is entitled to safe and healthy premises, he or she is not entitled to a perfect or aesthetically pleasing dwelling place.

In order to constitute a breach of the implied warranty of habitability, ". . . the defect must be of a nature and kind which will render the premises unsafe, or unsanitary and thus unfit for living therein." *Kline v. Burns*, 111 N.H. 87, 93, 276 A.2d 248, 252 (1971); *Mease v. Fox*, at Iowa, 200 N.W.2d 796. Materiality is a question of fact to be decided by the trier of fact on a case-by-case basis. Among those factors to be considered in determining whether a breach is material are 1) whether the condition violates a housing law, regulation or ordinance; 2) the nature and seriousness of the defect; 3) the effect of the defect on safety and sanitation; 4) the length of time for which the condition has persisted; and 5) the age of the structure. This proposed list of factors is not designed to be exclusive; the lower court, in its discretion, may consider any other factors it deems appropriate.

88

The tenant may assert a breach of the implied warranty of habitability as a defense against a landlord's action for possession or for unpaid rent. *Green v. Superior Court of City and County of San Francisco*, 10 Cal.3d 616, 111 Cal.Rptr. 704, 517 P.2d 1168 (1974); *Jack Spring, Inc. v. Little*, 50 Ill.2d 351, 280 N.E.2d 208 (1972); *Marini v. Ireland*, 56 N.J. 130, 265 A.2d 526 (1970); *Foisy v. Wyman*, 83 Wash.2d 22, 515 P.2d 160 (1973). The tenant also may assert a breach of the warranty as a counterclaim and seek reimbursement or a rent reduction for sums expended by the tenant for repairs made to make the dwelling habitable. Pa.R.C.P. 1031; *Garcia v. Freeland Realty, Inc.*, 63 Misc.2d 937, 314 N.Y.S.2d 215 (1970). If a landlord may be liable in tort for breaching his obligation to make repairs to the premises, as is the case in Pennsylvania, the landlord may be held liable for the cost of preventive repairs made by another. *Reitmeyer v. Sprecher*, 431 Pa. 284, 243 A.2d 395. In order to assert a breach of the implied warranty of habitability as a defense or as a counterclaim, a tenant must prove that he or she gave notice to the landlord of the defect or condition, that the landlord had a reasonable opportunity to correct the condition, and that the landlord failed to do so. *See, Marini v. Ireland*, at 56 N.J. 146, 265 A.2d 535; *Garcia v. Freeland Realty, Inc.*, at 63 Misc.2d 942–943, 314 N.Y.S.2d 222; *King v. Moorehead*, at 495 S.W.2d 76.

In the present case, appellant has counterclaimed for sums expended for, *inter alia*, repairs made to correct a dangerous condition on her bathroom floor, to replace a broken window, and to replace a broken lock on her front door. The appellant, therefore, may have prevented the commission of an actionable tort. That is, she may have prevented a serious fall caused by the dangerous condition of the bathroom floor, or she may have prevented a criminal assault, for which the landlord could have been held liable in tort, by replacing the broken window and lock. *See, Kline v. 1500 Massachusetts Avenue Apartment Corporation*, 141 U.S.App.D.C. 370, 439 F.2d 477 (1970). If damages based upon the commission of a tort would be appropriate, reim-

bursement for the reasonable cost of preventing or averting the occurrence of a tort is appropriate as well. *Garcia v. Freeland Realty, Inc.*, at 63 Misc.2d 942–943, 314 N.Y.S.2d 222.

Because we have held that a lease is no longer to be treated as a conveyance, but as a contract, standard contract remedies are available to both landlord and tenant. If the landlord sues for possession, based upon a claim of rent past due, and the tenant asserts the implied warranty of habitability as a defense, the court must determine whether a material breach of the warranty existed during the period for which past rent is claimed and, if such a breach has occurred, what portion of the tenant's rental obligation was suspended by the breach. If no part of the tenant's obligation was suspended, the landlord is entitled to a judgment of possession and past rent; if all of the tenant's obligation is suspended by a landlord's total breach of the warranty the action for possession must fail because there is no unpaid rent; if the rental obligation is found to be suspended in part, a judgment for possession must be denied if the tenant agrees to pay the part due; if the tenant refuses to pay the partial rent due, a judgment granting possession may be ordered. *Javins v. First National Realty Corporation*, at 138 U.S.App.D.C. 380–381, 428 F.2d 1082–1083.

When the tenant claims the warranty as a defense or counterclaim, he or she is entitled to the same remedies which are available for the breach of an express warranty: the monthly rent past and future (until the dwelling is returned to a habitable state) may be reduced by the difference between the agreed upon rent and the fair rental value of the apartment in its present condition; the rent may be reduced by the amount spent by the tenant on reasonable reparation and replacement in making the dwelling habitable; or the rent may be discharged if the tenant surrenders possession. *See King v. Moorehead*, at 495 S.W.2d 76; *Marini v. Ireland*, at 56 N.J. 146, 265 A.2d 535; *cf. McDanel v. Mack Realty Company*, at 315 Pa. 177–178,

172 A. 98; *Gorman v. Miller*, at 27 Pa.Super. 68. (Commercial leases.) As with all contracts, either party may seek rescission of the lease and incidental or consequential damages for a breach. *Lemle v. Breeden*, at 51 Haw. 436, 462 P.2d 475; *Mease v. Fox*, at Iowa, 200 N.W.2d 797.

As applied to the case before us, we find that appellant should be given an opportunity to prove that appellee has breached the implied warranty of habitability in the premises she has rented from him. The breach of the warranty should be available to her both as a defense and as a counterclaim.

Accordingly, we reverse the lower court's decision sustaining appellee's demurrers to appellant's proposed defense and counterclaim and the judgments for possession, rent, and costs entered in appellee's favor, and we remand this case for proceedings consistent with this opinion.

PRICE, J., files a dissenting opinion.

WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.

PRICE, Judge, dissenting:

I dissent for several reasons. First, unlike the majority, I do not feel that Pennsylvania has been moving consistently and inevitably toward adoption of an implied warranty of habitability in residential leases. Second, I do not consider the extreme burden imposed by the majority opinion on both landlords and the judicial machinery to be warranted.

The law in Pennsylvania is that while a landlord may expressly covenant that premises are tenantable, there is no implied covenant of this nature on the landlord's part. *Smith v. M.P.W. Realty Co., Inc.*, 423 Pa. 536, 225 A.2d 227 (1967); *Kearse v. Spaulding*, 406 Pa. 140, 176 A.2d 450 (1962). Further, Pennsylvania has never imposed an ongoing duty on landlords to keep leased premises in repair, unless he expressly covenants to do so. *Solomon v. Neisner Bros.*, 93 F.Supp. 310 (M.D.Pa.1950), *aff'd*, 187 F.2d 735 (3d

Cir. 1951); *Lopez v. Gukenback*, 391 Pa. 359, 137 A.2d 771 (1958); *Smith v. Kravitz*, 173 Pa.Super. 11, 93 A.2d 889 (1953).

*Elderkin v. Gaster*, 447 Pa. 118, 288 A.2d 771 (1972), abolished caveat emptor in the home builder-vendor situation. However, the obligation imposed on the builder-vendor is one to guarantee habitability at the time of the sale, as is the case in the normal buyer-seller relationship. Implied warranty, as adopted by the majority, imposes an ongoing obligation on landlords to maintain leased premises in a "habitable" condition, a crucial term which, for all practical purposes, the majority leaves undefined. Holding that "habitability" is to be determined on a case by case basis according to malleable considerations renders it unlikely that there will be efficient resolution of each case. Because varying standards will necessarily be imposed by the courts, a landlord cannot possibly anticipate what is legally demanded of him. Therefore, a landlord must accede to every whim of the tenant or face the equally costly route of postponed rent collection pending legal proceedings.

One may argue that the housing situation in our country has deteriorated to the point of posing a serious threat to the health and welfare of the populace. While I can sympathize with that position, I do not subscribe to the majority's attempted solution. Inconvenience and injustice in residential leasing are not cured by simply substituting a new victim.

Even if I were inclined to agree that an implied warranty of habitability should be read into all residential leases, I feel that any change in landlord-tenant law so drastic as that adopted by this court today should come from the legislature. Exact standards should be articulated so that all are aware of their obligations and entitlements. In addition, an escrow system should be devised so that withheld rent is put in safekeeping from the outset of the tenant's withholding. I feel that responsibility for development of such an intricate plan properly lies with the legislature.

I would affirm the order of the lower court.