## Kuhn v. Crown American Corp.

*Robert L. O'Brien,* for plaintiff.
*William A. Addams,* for defendant.

SHUGHART, *P.J.,* June 17, 1981—In count I in assumpsit, plaintiffs, Larry M. Kuhn and Marlin W. Kuhn, allege that defendant, Crown American Corporation, breached a written lease resulting in pecuniary loss to them in excess of $29,000. Count II is in trespass alleging fraud. In this count plain-

tiffs have asked for punitive damages in excess of $10,000. The pleadings are closed, and defendant has moved for judgment on the pleadings.

In ruling on defendant's motion, we must consider plaintiffs' complaint, defendant's answer containing new matter, and plaintiffs' reply to the new matter: Herman v. Stern, 419 Pa. 272, 276 fn.1, 213 A. 2d 594, 596, fn.1 (1965). All well-pleaded allegations of plaintiffs' pleadings must be accepted as true; moreover, any of defendant's allegations denied by plaintiffs must be rejected as untrue: Pennsylvania Gas and Water Company v. Kassab, 14 Pa. Commonwealth Ct. 564, 322 A. 2d 775 (1974). Judgment on the pleadings is appropriate only in cases which are "clear and free from doubt." Dilks v. Flohr Chevrolet, 411 Pa. 425, 430, 192 A. 2d 682, 685 (1963).

The central issue concerns the validity of Article XX of the written lease entered into by the parties on or about February 3, 1975.[1] In general, the lease provided that defendant, the lessor, would lease a storeroom at the Carlisle Mall to plaintiffs for a period of ten years. The lease was in effect for over three years before the present controversy arose.

---

1. Paragraph 1 of Article XX reads in part: "Lessee covenants and agrees not to assign this Lease or to sublet the whole or any part of the Demised Premises, or to permit any other persons to occupy same without the written consent of the Lessor references elsewhere herein to assignees notwithstanding. In the event that the Lessee requests permission to either assign this Lease, or to sublet the whole or any part of the Demised Premises . . ., then Lessor may elect to do one of the following: (a) consent; (b) withhold consent in its sole and absolute discretion; or (c) terminate this Lease within thirty (30) days after receipt of Lessee's request to assign or sublet, in which event this Lease shall terminate and end upon thirty (30) days written notice of Lessor's election to so terminate."

On or about July 3, 1978, plaintiffs contacted Nicholas O. Antonazzo, vice president and general manager of defendant corporation, about the possibility of selling their business, Kuhn's Laundromat, to a prospective purchaser. *Antonazzo allegedly told plaintiffs at that time defendant might be a willing purchaser.* He stated that plaintiffs' request should be forwarded in writing. A letter dated July 3, 1978, from Antonazzo to plaintiff Marlin Kuhn again called to plaintiffs' attention the need for a written request to sell or assign the lease to the premises. The letter also stated that Article XX would govern any such request. A written request from plaintiff Marlin Kuhn to defendant followed on July 7, 1978.[2]

Antonazzo responded in a letter dated July 24, 1978. He informed plaintiffs that defendant corporation had elected to terminate the lease pursuant to its rights under Article XX. See note 1, supra. Later plaintiffs received a letter from James M. Gdula, assistant legal counsel and assistant secretary of defendant corporation, notifying plaintiffs that the lease would expire on August 24, 1978, at which time defendant would re-enter and take possession of the premises.

Plaintiffs contend that defendant's termination of the lease was wrongful. Notwithstanding plaintiffs' letter requesting permission "to sell" the laundromat, plaintiffs allege that they never undertook action sufficient to invoke Article XX. Furthermore, they allege that Article XX is uncon-

---

2. The letter from Kuhn to Antonazzo read: "In accordance with our phone con and lease agreement Article XX and XXXI, I hereby request your consent to sell my laundromat at The Carlisle Plaza Mall, Carlisle, Pa."

scionable as a matter of law and as applied by defendants, and that it is illegal as a restraint of trade. Defendant contends that these allegations are questions of law to be decided at this stage of the proceedings. We disagree.

Article XX goes beyond any restrictions of assignment and subletting found in our case law. Pennsylvania law has been based on the general rule that a lease may be assigned unless a provision thereof or a statute restricts assignments. See Davis v. Hartel, 56 Pa. Superior Ct. 557 (1914). A provision making the landlord's consent a necessary condition of assignment has long been recognized as legitimate: Girard Trust Co. v. Cosgrove, 270 Pa. 570, 113 A. 741 (1921). But Article XX goes much further: the landlord was allowed to terminate the lease after a mere *request* by the lessee to assign or sublet. Neither party has called to the court's attention any cases interpreting leases with similar provisions, nor have any such cases been disclosed through our research.

The one-sidedness of Article XX is apparent. In practice, a landlord would most likely terminate the lease if the lessee's business or the overall business of stores in the mall were strong, thereby enabling the landlord to set a higher rental value. On the other hand, if the market value of stores in the mall has decreased, then the landlord would probably not terminate the lease but instead hold the tenant to the full term of the lease.

There is also a patent inconsistency between the provisions of Article XX. On the surface, the lease provides that the lessee may assign or sublet with the lessor's consent. However, the termination provision takes that right completely away from the lessee. An analogy to this situation would be where an employe was required to get his employer's con-

sent before taking time off, and whose employer could either grant the request, refuse the time off, or fire the employe *just for asking*. A mere request to assign, even though assignment it totally prohibited, would not justify a forfeiture. Thus, under Article XX the lessees were worse off than had the lease totally prohibited an assignment or sublease. The provision, under the guise of a regulation, actually serves as a trap for the unwary or trusting lessee.

The inconsistency within Article XX also creates a false sense of security in the lessee: he is led to believe that by purporting to allow an assignment or sublease, with the lessor's consent, the lessor impliedly agrees to exercise the termination power reasonably and in good faith. Indeed, some courts, as well as the American Law Institute, have held that a landlord's consent to an assignment or sublease cannot be withheld unreasonably, unless the provision in the lease was freely negotiated. See Restatement, 2d, Property, §15.2 (cases cited in paragraph 7 of Reporter's Note to section 15.2). The Restatement recognizes that "[n]"o legitimate purpose is served by either party to a lease refusing unreasonably to consent to a transfer by the other." Id., Comment g. "A reason for refusing consent, in order for it to be reasonable, must be objectively sensible and of some significance and not be based on mere caprice or whim or personal prejudice." Id.

The Restatement's concern for a "legitimate purpose" is appropriate. Although a lessor has a legitimate interest in restricting the lessee's capacity to assign or sublet, no comparable interest supports Article XX. Provisions commonly found in leases restricting a lessee's power to assign or sublet protect the lessor from undesirable tenants. Article XX does not fall in that class. It provides that a *mere*

*request* to assign or sublet is sufficiently to justify a termination of the lease. An attempt to assign or sublet without consent is not even required. Since no legitimate purpose is served by a provision allowing termination after a mere request to assign or sublet, it must be subjected to the closest scrutiny for unconscionability.

In addition to the legal principles relied on above, two other well-settled rules of construction must be kept in mind: a lease should be construed to avoid forfeitures, Northway Village No. 3, Inc. v. Northway Properties, Inc., 430 Pa. 499, 244 A. 2d 47 (1968), and " 'in cases of doubt or uncertainty as to the meaning of a provision of a lease, it is to be construed most strongly against the lessor and in favor of the lessee.' " Dilks v. Flohr Chevrolet, 411 Pa. 425, 430, 192 A. 2d 682, 685 (1963). Moreover, in Pugh v. Holmes, 253 Pa. Superior Ct. 76, 384 A. 2d 1234 (1978) aff'd as modified, 486 Pa. 272, 405 A. 2d 897 (1979), the court held that leases were "no longer to be treated as a conveyance, but as a contract. . . ." Id. at 89, 384 A. 2d at 1240. Thus, in Pennsylvania, leases are controlled by principles of contract law.

The principle of contract law at issue in this case, unconscionability, is addressed in Restatement, 2d, Contracts, §208.[3] The American Law Institute, in Comments a and f of section 208, states that a party should have the opportunity to present evidence concerning the "setting, purpose and effect

---

3. Section 208 provides: "If a contract or term thereof is unconscionable at the time the contract is made a court may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term, or may so limit the application of any unconscionable term as to avoid any unconscionable result."

of the contract." Similarly, in sale of goods cases where a party claims that a contract or clause thereof is unconscionable, "the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination." Uniform Commercial Code, as amended, 13 Pa.C.S.A. §2302(b).

The court in Leidy v. Deseret Enterprises, Inc., 252 Pa. Superior Ct. 162, 381 A. 2d 164 (1977), denied judgment on the pleadings where the issue of unconscionability was present. In that case, an exculpatory clause was alleged to be unconscionable. The court relied on the well-settled rule "that a motion for judgment on the pleadings can only be granted where the moving party's right to prevail is so certain that it is clear that a trial would be fruitless exercise." Id. at 172, 381 A. 2d at 169 (citations omitted).

Clearly, no summary judgment for defendant is justified in this case. Plaintiffs will be afforded an opportunity to support their allegations in count I. Judgment on the pleadings is denied.

Defendant's motion will also be denied in count II in trespass, although plaintiffs' complaint is defective and requires amendment. As submitted, count II appears to be a back door attempt to collect punitive damages for breach of contract. Plaintiffs rely on a theory of fraud, but plead no actual damage. However, the right to punitive damages is contingent on the existence of actual damages: Hilbert v. Roth, 395 Pa. 270, 149 A. 2d 648 (1959); Shane v. Hoffmann, 227 Pa. Superior Ct. 176, 324 A. 2d 532 (1974). The joinder of causes of action pursuant to Pa.R.C.P. 1020 does not excuse plaintiffs from adequately pleading each count.

The deficiency of plaintiffs' complaint does not justify granting defendant's motion for judgment on the pleadings. See Bata v. Central-Penn National Bank of Philadelphia, 423 Pa. 373, 224 A. 2d 174 (1966), cert. denied, 386 U.S. 1007 (1967). "[L]eave to amend should be granted unless it would result in an error of law or in prejudice to the opposing party." Id. at 385, 224 A. 2d at 182. In accordance with the liberal approach of Pa.R.C.P. 1033, plaintiffs will be granted leave to amend their complaint.

Defendant contends, however, that plaintiffs' reply to defendant's allegation that the trespass action is barred by the statute of limitations is insufficient, and thereby constitutes an admission.[4] Although a demand of proof answer pursuant to Pa.R.C.P. 1029(c)(1) can be deemed an admission where the answering party obviously has knowledge of the relevant facts, e.g., Medusa Portland Cement Company v. Marion Coal & Supply Co., 204 Pa. Superior Ct. 5, 201 A. 2d 285 (1964), here plaintiffs are responding to a question of law and their reply does not constitute an admission of defendant's averment.

Since plaintiffs will be given leave to amend count II of the complaint, consideration of the motion for judgment as to it is premature.

## ORDER

And now, June 17, 1981, for the reasons set forth in the foregoing opinion, defendant's motion for

---

4. Plaintiffs' reply provides: After reasonable investigation plaintiff is without knowledge or information sufficient to form a belief as to the truth of the averment and proof thereof is demanded at trial.

judgment on the pleadings is denied. Plaintiffs are given 20 days to file an amended complaint as to count II of the complaint.