J-A14033-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MARILOU WRIGHT, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| KEVIN MULLEN, | : | |
| | : | |
| Appellee | : | No. 1430 MDA 2014 |

Appeal from the Judgment Entered October 2, 2014,
in the Court of Common Pleas of Centre County,
Civil Division at No(s): 2013-4059

BEFORE:  BENDER, P.J.E., JENKINS and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:                **FILED JULY 17, 2015**

Marilou Wright (Wright) appeals from the judgment entered on October 2, 2014, against her and in favor of Kevin Mullen (Mullen).[1]  We affirm.

In May of 2010, Wright entered into a residential lease with Mullen. The tenancy was uneventful until June 25, 2013, when Mullen discovered that Wright's pets had caused substantial damage to the floors of the rental property.  Subsequent to this discovery, and despite multiple attempts to remedy the damage, the relationship between the parties deteriorated.

---

[1] We note that Wright purported to appeal from the order denying her post-trial motion, which does not constitute an appealable order. ***Fanning v. Davne***, 795 A.2d 388, 391 (Pa. Super. 2002) (providing appeal to Superior Court can only lie from judgments entered subsequent to trial court's disposition of any post-verdict motions, not from the order denying post-trial motions).  Accordingly, at the direction of this Court, the prothonotary entered judgment in this matter on October 2, 2014.  We have corrected the caption accordingly.

* Retired Senior Judge assigned to the Superior Court.

Ultimately, Wright moved out of the rental property on August 31, 2013, nine months prior to the expiration of the lease. Mullen was able to repair and re-lease the property on January 1, 2014, but demanded compensation from Wright, as well as payment of rent, under the terms of the lease, through May 31, 2014.

On October 17, 2013, Wright filed a declaratory judgment action asking the court to declare, *inter alia*, "the respective rights and responsibilities of the parties" under the lease. Action for Declaratory Judgment, 10/17/2013, at 8. Mullen filed an answer and new matter with counterclaim on February 4, 2014.

On May 29, 2014, after a three day bench trial, the trial court decided in favor of Mullen and awarded a net of $11,974.11 in damages. The trial court denied Wright's post-trial motion. This appeal followed. Both Wright and the trial court complied with the requirements of Pa.R.A.P. 1925. Wright raises the following four issues for our review.

> A. Did the [t]rial [c]ourt err in entering judgment in favor of [Mullen] and against [Wright] for rent, late fees and utilities by ignoring substantial evidence presented by [Wright]: (1) that [Mullen] breached the covenant of quiet enjoyment owed to [Wright]; (2) that [Wright] surrendered the premises on August 31, 2013 and [Mullen] accepted said surrender by removing the keys from the premises that day, canceling the fuel oil to the premises, and listing the property for lease on Craig's List, or alternatively that [Mullen] repudiated the lease; and (3) that [Mullen] breached the lease and violated The Landlord and Tenant Act of 1951 by charging [Wright] an illegal security deposit under duress?

B. Did the [t]rial [c]ourt err in entering judgment in favor of [Mullen] and against [Wright] for damages to the leased premises by ignoring substantial evidence establishing that the lease which was drafted by [Mullen] did not include a default/remedies provision authorizing [Mullen] to claim the damages which said court awarded to [Mullen] in its verdict?

C. Did the [t]rial [c]ourt err in entering as part of its gross damage award against [Wright] (before credits) the sum of $12,446.83, representing one-half of the Mammoth Restoration estimate given substantial evidence which established that: (1) [Mullen] has never paid Mammoth any money for any restoration work; (2) the Mammoth estimate was approximately three times as high as the Home Depot estimate that [Mullen] had originally asked [Wright] to pay; and (3) [Mullen] performed flooring repairs prior to re-leasing the premises on January 15, 2014 which were similar to the flooring repairs commissioned by [Wright] in August of 2013 for which [Wright] only paid Celestino Remodeling the sum of $905.00?

D. Did the [t]rial [c]ourt err by failing to award [Wright] any damages other than a credit for the two security deposits in light of substantial evidence presented by [Wright] establishing that: (1) [Mullen] charged [Wright] an illegal security deposit of $1,500.00, (2) [Mullen] did not appropriately sequester the original security deposit as required by The Landlord and Tenant Act of 1951, and (3) [Mullen] did not properly account for either security deposit or related interest within thirty days of surrender and acceptance as required by said Act?

Wright's Brief at 3-4 (answers omitted).

Our standard of review in a non-jury trial is well established:

We must determine whether the findings of the trial court are supported by competent evidence and whether the trial judge committed error in the application of law. Additionally, findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed absent error of law or abuse of discretion.

***Davis ex rel. Davis v. Government Employees Insurance Company***,

775 A.2d 871, 873 (Pa. Super. 2001) (quotations omitted).

Additionally, we are mindful that "leases are in the nature of contracts and are thus controlled by principles of contract law, including the well settled rules of interpretation and construction." ***Cusamano v. Anthony M. DiLucia, Inc.***, 421 A.2d 1120, 1122 (Pa. Super. 1980). "Interpretation of a contract, in this case a lease, poses a question of law." ***Charles D. Stein Revocable Trust v. General Felt Industries, Inc.***, 749 A.2d 978, 980 (Pa. Super. 2000). "Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as this court may review the entire record in making its decision." ***Kripp v. Kripp***, 849 A.2d 1159, 1164 n. 5 (Pa. 2004).

Following our review of the certified record, the parties' briefs, and the relevant law, we conclude that the opinion of the Honorable Bradley P. Lunsford states findings of fact that are supported by the record, evidences no abuse of discretion, and thoroughly and correctly addresses and disposes of Wright's issues and supporting arguments. Accordingly, we adopt the trial court's opinion, filed on October 31, 2014, as our own, and affirm the disposition of Wright's issues on the basis of that opinion. The parties shall attach a copy of the trial court's October 31, 2014 opinion in the event of further proceedings.

Judgment affirmed.

J-A14033-15

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/17/2015



# IN THE COURT OF COMMON PLEAS OF CENTRE COUNTY, PENNSYLVANIA
## CIVIL DIVISION

| | |
|---|---|
| MARILOU WRIGHT<br>Plaintiff | :<br>:<br>: |
| vs. | :<br>:     No. 2013-4059<br>: |
| KEVIN MULLEN<br>Defendant | :<br>: |

*Attorney for Plaintiff:*            *David D. Engle, Esquire.*
*Attorney for Defendant:*       *Andrew Rehmeyer, Esquire.*

### OPINION REGARDING MATTERS COMPLAINED OF ON APPEAL

LUNSFORD, J.

Presently before the court is Marilou Wright's (hereinafter "Plaintiff") appeal of a decision rendered by this court on May 29, 2014.

### FACTUAL AND PROCEDURAL BACKGROUND

In May 2010 the Plaintiff entered into a residential lease with Kevin Mullen (hereinafter "Defendant"). The lease contained the following relevant provisions:

> 4. Tenant will tell owner of all concerns and damages immediately. Tenant will keep house in a safe and sanitary condition.
> 5. Pets require owner's approval.
> 6. Tenant allows owner to enter property for including, but not limited to, repairs and showing property to future tenants. Owner will normally give tenant advance notice by email when possible.

The Defendant agreed to allow the Plaintiff to keep her pets on the property. Plaintiff's pets included four cats and one dog. The Plaintiff continuously lived on the property from June 2010 through August 2013. The Plaintiff signed a lease to continue living on the property from June 1, 2013 through May 31, 2014. The Defendant did not enter or see the inside of the house rented to the Plaintiff again until June 25, 2013.

1

# APPENDIX D

On June 25, 2013, the Defendant was on the premises to fix an electrical outlet on the porch. Finding that the outlet was not working, the Defendant opened the door to enter the property and check the breaker. Upon opening the door, Defendant could see that the house was in disarray and he could smell animal excrement emanating from it. The Defendant could also see the floors were damaged. The Defendant then called the Plaintiff and requested that she meet him at the property to discuss the problem. The two parties had a discussion, which lasted approximately fifty minutes, on what needed to be done to get the house into habitable conditions. The Plaintiff agreed to clean the place. Sometime in July 2013, the Plaintiff paid the Defendant $1,500.00

The Plaintiff eventually hired a contractor to refinish the damaged floors. The Defendant found out about this a few days after work on the floors began. The Defendant then asked the contractor to stop work and vacate the property. The Defendant wanted to decide how to fix the damaged floors and get his own estimate. From June 25, 2013 through August 31, 2013, the two parties' relationship deteriorated. The Plaintiff notified the Defendant on her intentions to break the lease and move out. The Defendant advised that Plaintiff would still owe him rent for the remainder of the lease. After August 31, 2013 the Plaintiff was no longer living on the Defendant's property. After the Plaintiff had moved out, the Defendant obtained an estimate from Mammoth Restoration for new flooring and eliminating the pet odor in the apartment. The estimate was for a little over $25,000.00 and included new flooring as well as cleaning out the air ducts where it appeared the cats had urinated and vomited. The Defendant did not retain Mammoth Restoration.

The Defendant made enough repairs as necessary to the house to be able to rent it again. He found a new tenant and entered into a lease that began on January 1, 2014. He offered the

2

lease to the new tenant for $100.00 less than his lease with the Plaintiff because of the condition of the property. The Defendant still wishes to eliminate the odor in the house and have new floors installed by Mammoth Restoration.

After a three day bench trial this court decided in favor of the Defendant and awarded $11,974.11 in damages, accounted as follows: $1,250.00 for September rent; $90.00 for late fees; $81.38 for September utilities/electric; $50.00 for water, garbage, recycling, and sewage; $200.00 for cleaning; $12,446.83 for one half of all restoration repairs; $545.90 for duct cleaning; $60.00 for replacing window blinds; $2,750.00 credited for "security deposits." The Plaintiff appeals this decision.

## DISCUSSION

Four issues are raised with regard to the Plaintiff's appeal.

1.  The Plaintiff contends that this court erred in entering judgment in favor of the Defendant for rent and late fees because substantial evidence was ignored regarding the Plaintiff's right to quiet enjoyment, surrender of the premises, and the Defendant charging an illegal security deposit.
2.  The Plaintiff contends that this court erred in entering judgment in favor of the Defendant for rent and late fees because the lease drafted by Defendant did not include a default provision authorizing the Defendant to claim the damages.
3.  The Plaintiff contends that this court erred in entering judgment in favor of the Defendant for fees associated with Mammoth Restoration.
4.  The Plaintiff contends that this court erred by not awarding the Plaintiff damages and only credited her security deposits towards the Defendant's damages.

*I.    Quiet Enjoyment/Surrender/Illegal Security Deposit*

The Plaintiff contends that this court erred in entering judgment in favor of the Defendant for rent and late fees because it ignored evidence presented by the Plaintiff, which included proof that the Defendant had breached the covenant of quiet enjoyment, proof that the Plaintiff

3

Printed from Centre County Online Access - 11/25/2014 11:15:56 AM

surrendered the premises, and proof that the Defendant breached the lease and violated Pennsylvania law.

First, the Plaintiff claims that there was substantial evidence presented that the Defendant had breached the covenant of quiet enjoyment owed to the tenant. However, there was no evidence of this presented to the court. The Plaintiff claimed that the Defendant had entered her property on multiple occasions and had testified under oath about specific days in particular. However, the Defendant presented e-mail correspondences between the parties where he specifically asked when to meet with the Plaintiff at the property on those particular days, as well as other e-mails notifying the Plaintiff he would be on the property on other days. There is an implied covenant of quiet enjoyment in every lease of real property. *Branish v. NHP. Property Mgmt. Inc.*, 694 A.2d 1106, 1107 (Pa. Super. 1997); *Lichtenfels v. Bridgeview Coal Co.*, 531 A.2d 22, 25 (Pa. Super. 1987). However, implied covenants are only to be applied where there are no contractual terms in the lease that contradict them. *See John B. Conomos, Inc. v. Sun Co., Inc. (R&M)*, 831 A.2d 696, 706 (Pa. Super. 2003) (the court states that unequivocal contract terms hold a superior position to any terms implied by the courts); *Jacobs v. CNG Transmission Corp.*, 772 A.2d 445 (Pa. 2001).

The Plaintiff signed a lease with the Defendant reserving to the Defendant the right to enter the property for repairs where he will give advance notice when possible. Every instance presented to the court of the Defendant entering the property had to do with repairs. Additionally, because Plaintiff was the primary cause for the damage to the apartment, she cannot claim constructive eviction by the Defendant's actions. *See Versatile Metals, Inc. v. Union Corp.*, 693 F. Supp. 1563, 1569 (E.D. Pa. 1988) (applying Pennsylvania law). Because of the lack of evidence presented that the Defendant breached the Plaintiff's right to quiet

4

Printed from Centre County Online Access - 11/25/2014 11:15:56 AM

enjoyment, the Plaintiff's agreement to a decreased right to quiet enjoyment, and the Plaintiff being the cause of the damage to the property, this court held that the Defendant did not breach the Plaintiff's right to quiet enjoyment.

Next, the Plaintiff claims that there was substantial evidence presented that the Plaintiff surrendered the premises and the Defendant accepted that surrender by removing the keys from the premises that day, canceling the fuel oil to the premises, and listing the property for lease on www.craigslist.com. Whether a land lord accepts a tenant's surrender of a premise is based on a determination of the landlord's intent. *Onal v. BP Amoco Corp.*, 275 F. Supp. 2d 650 (E.D. Pa. 2003), judgment affirmed 134 Fed. Appx. 515 (3d Cir. 2005) (applying Pennsylvania law). The burden is on the tenant to show by clear and convincing evidence that the landlord's actions constitute acceptance of surrender. *Stonehedge Square Ltd. Partnership v. Movie Merchants, Inc.*, 685 A.2d 1019 (Pa. Super. 1996). This can be done by showing the landlord's actions were adverse to reoccupation of the property by the tenant and to a renewal of the relations created by the lease. *Onal v. BP Amoco Corp.*, 275 F. Supp. 2d 650.

While the Plaintiff was willing to surrender the property, the Defendant was not willing to accept her surrender. The Defendant specifically told the Defendant through e-mail that he was not accepting her surrender and expected her to pay through the entire term of the lease, even if she vacated the premises. The Defendant's act of accepting the keys the Plaintiff left at the property is not clear and convincing evidence that the Defendant accepted the surrender, especially with his unequivocal statement to the Plaintiff that he was not accepting the surrender. The Defendant's actions are more akin to that of protecting of the property from third parties, than as a dominion of control contrary to the Plaintiff's interest in the property. *See Boesch v.*

5

Printed from Centre County Online Access - 11/25/2014 11:15:56 AM

*Ericsson*, 9 Pa. D. & C. 4th 20, 1990 WL 323045 (C.P. 1990) (Landlord changing properties locks after the premise was burglarized not considered an acceptance of surrender).

Additionally, the Defendant's actions of canceling the fuel to the premises and listing the property on www.craigslist.com were not adverse to the reoccupation of the property. The act of canceling the fuel was not an act adverse to reoccupation of the property because if the Plaintiff did decide to move back into the property the fuel could be turned back on. The Defendant had a duty to mitigate damages, and his cancelling of the fuel was of benefit to the Plaintiff because if he had not cancelled it she would have been liable for its costs. Further, the advertising of the apartment on craigslist was not an acceptance of the Plaintiff's surrender. The advertisement was only online for a short amount of time. The Defendant took the posting down and waited a month to see if the Plaintiff would re-enter the premise. When he was satisfied she would not re-enter, he decided he should enter into a new lease to mitigate damages. It was October when the Defendant decided to do a quick fix of the floor and enter into a new lease as soon as possible. It is at this point that this court found that the Defendant accepted the Plaintiff's surrender of the property. Based on the Defendant's express statement that he did not accept the Plaintiff's surrender at that time and the Defendant not taking any actions until it was clear the Plaintiff was not reentering the premises in October, this court assessed the Plaintiff the full cost of the September rent and utilities.

Finally, the Plaintiff alleges that there was substantial evidence presented that the Defendant breached the lease and violated the Pennsylvania Landlord and Tenant Act by charging the Plaintiff an illegal security deposit. A landlord cannot require a sum in excess of two months' rent to be deposited in escrow for the payment of damages during the first year of any lease and one month's rent in subsequent years. 68 P.S. § 250.511(a)-(c). Plaintiff paid one

6

month's rent in a security deposit at the beginning of the lease term in 2010. She paid no security deposit in 2011 or 2012. Both parties agreed that the Plaintiff gave the Defendant $1,500.00 in July, 2013. On the first day of the bench trial, Plaintiff stated that she was seeking to have her "security deposit returned plus the additional fifteen hundred dollars" which she claims she felt pressured to give Defendant. Tr. 3/27/14 at 14. This court *did award* Plaintiff credit for her security deposit and the additional $1,500.00. Although Plaintiff claims she was pressured to give Defendant the additional $1,500.00, she sent him an e-mail on July 25, 2013 indicating that she would be "*happy*" to give him "another month's deposit" to "evidence her commitment to clean up the property." Tr. 5/29/14 at 18-19. This court notes that $1,500.00 amounts to $250.00 more than one month's rent. Although Plaintiff may have felt some pressure to give the money to Defendant, in large part, that was because she had allowed the property to fall into a very unsanitary condition as evidenced by her acknowledgment in the same e-mail wherein she apologized for allowing the "house to get in disarray." It was clear the $1,500.00 was provided because of the condition of the property: the mess which Defendant described as "hoarding," the offensive pet odors, and the damage to the oak flooring, in an attempt to ensure good faith in moving forward to clean up the property and to avoid the Defendant initiating an eviction action. Because this court awarded Plaintiff a credit for her $1,250.00 security deposit and the additional $1,500.00 paid to Defendant in July 2013, this court contends there was no error.

## II.     *Default Provision Authorizing Damages*

The Plaintiff contends that this court erred in entering judgment in favor of the Defendant for rent and late fees because it ignored evidence presented by the Plaintiff that the Defendant did not include a default provision authorizing the Defendant to claim damages which this court awarded in its verdict. While there was no provision expressly defining what the Plaintiff would

7

have to pay for if the property were damaged, this court awarded damages based on real property and contract principles.

A landlord may commence an action for injuries to a leased property if actions were taken that affect his reversionary interest. A tenant is liable for damages caused by malicious, abnormal, or unusual use. *Pugh v. Holmes*, 384 A.2d 1234 (Pa. Super. 1978) (citing *Marini v. Ireland*, 265 A.2d 526 (N.J. 1970). Additionally, the injury must be actual permanent harm that affects the value of the landlord's reversionary interest. *Deleone v. Azad, Inc.*, 52 Pa. D. & C. 2d 727, 1971 WL 14207 (C.P. 1971). The Plaintiff owned four cats and one dog, and allowed them to urinate and vomit throughout the property, not just in litter boxes. Cat urine is notorious for its noxious odor which is very hard to eliminate as well for as being a health risk. This court found that the Plaintiff allowing her cats to behave this way and not providing more sanitary conditions was an unusual use of the property. The cat urine caused actual permanent harm on the Defendant's reversion as demonstrated by him having to charge less money to get another tenant to lease the premises. For those reasons this court found that the Plaintiff was liable to the Defendant for the restoration of the floors, cleaning, duct cleaning, and the replacement of window blinds even though there was no default provision authorizing the damages.

The Plaintiff and the Defendant entered into a contract when they signed the residential lease starting on June 1, 2013. Because this court did not find a breach of any covenants on the Defendant's part, the Plaintiff was obligated to pay monthly rent, utilities, and late fees as stipulated by the contract. The Defendant reasonably began to mitigate his damages in October. Therefore, this court found that the Plaintiff was liable to the Defendant for September rent, utilities, and late fees.

8

Printed from Centre County Online Access -- 11/25/2014 11:15:56 AM

### III. Damages for Mammoth Restoration Estimate

The Plaintiff contends this court erred in entering judgment in favor of Defendant for fees associated with Mammoth Restoration. Specifically the Plaintiff claims damages should not be awarded for this because the Defendant never paid to Mammoth Restoration, no work was done by Mammoth Restoration, the estimate was higher than a previous Home Depot estimate furnished, and the Defendant performed flooring repairs similar to the one Plaintiff performed previously and only paid $905.00.

The Plaintiff should be charged for half of the Mammoth Restoration estimate. A Mammoth Restoration employee, admitted as an expert, testified to what he believed the Defendant would have to pay to completely eliminate the cat urine odor from the house as well as fix the floors. The Plaintiff provided no expert testimony to dispute the Mammoth Restoration estimate. While the Plaintiff provided some estimates, they were only estimates for how much it would cost to refinish the floors. One of the Plaintiff's estimates included the Defendant's initial estimates to just refinish the floors with Home Depot. Subsequently, the Defendant decided that the cat urine odor needed to be eliminated completely, which required replacing the floors. The other estimate the Plaintiff provided was one for $905.00 that she paid to have the floors refinished. However, the Mammoth Restoration estimate was for completely new floors as well as for a chemical treatment of the property to eliminate the cat urine odor. Also, the Plaintiff's estimate of $905.00 for the refinished floors is misleading. That money was only for a partially completed project before the Defendant decided he wanted to pick the company that would redo the floors. The Defendant asserts that the actual cost of refinishing the floors prior to re-leasing the property cost considerably more than that. However, the Defendant is not claiming damages for the temporary solution; he is claiming damages for a permanent solution for eliminating the

9

problem. Additionally, this court is not giving the Defendant a windfall. The Defendant still bears the cost of the other half of the Mammoth Restoration, this accounts for the depreciated condition the floors were in prior to their damage--the oak flooring was original to the house. For these reasons, this court found that the Defendant was entitled to damages for one half of the Mammoth Restoration estimate.

*IV.   Damages awarded*

The Plaintiff contends this court erred by failing to award the Plaintiff any damages other than a credit for two security deposits in light of substantial evidence presented establishing that the Defendant charged the Plaintiff an illegal security deposit of $1,500.00, the Defendant did not appropriately sequester the original security deposit as required by the Pennsylvania Landlord and Tenant Act, and the Defendant did not properly account for either security deposit within thirty days of surrender and acceptance as required by the Pennsylvania Landlord and Tenant Act.

With respect to the Plaintiff's first claim that of an illegal security deposit of $1,500.00 this court addressed this issue above.

With respect to the Plaintiff's second claim that the Defendant did not properly sequester the original security deposit as required by the Pennsylvania Landlord Tenant Act, this court finds the claim meritless on appeal. This claim was not addressed in the Plaintiff's original complaint. Therefore, it would not be proper to determine this issue on appeal. Finally, the Plaintiff alleges that the Defendant did not properly account for either security deposit within the thirty days of surrender. However, no evidence was provided that the Defendant did not account for this money. Therefore, this court found that the money the Plaintiff had already paid the Defendant should be credited towards the final judgment.

10

Printed from Centre County Online Access -- 11/25/2014 11:15:56 AM

Therefore, this Court contends that it did not commit and error of law or abuse its

discretion in entering judgment in favor of the Defendant and against the Plaintiff.

Date: 10/31/14

BY THE COURT:

_____
Bradley P. Lunsford, Judge

11